JAMES CASE *et al.*, Plaintiffs-Appellants, v. ROBERT W. FORLOINE *et al.*,
Defendants-Appellees.

First District (6th Division)   No. 1—92—2219

Opinion filed September 30, 1993.

Robert J. Zaideman, of Epstein, Zaideman & Esrig, P.C., of Chicago, for
appellants.

Much, Shelist, Freed, Denenberg & Ament, P.C., of Chicago (Deborah S. Bussert, of counsel), for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, James and Karen Case, filed a complaint for declaratory and injunctive relief and for damages, seeking a turnover of the earnest money deposited by defendants, Robert Forloine and Gwen Rose, with codefendant, Near North National Title Corporation, pursuant to a real estate sales contract between plaintiffs, as sellers, and defendants, as purchasers. (Near North Title is not a party to this appeal.) Following a bench trial, the court determined that plaintiffs had not proved that defendants failed to exercise good faith in seeking the mortgage specified in the mortgage contingency clause of the contract. Accordingly, judgment was entered in favor of defendants on count I of the complaint. Plaintiffs appeal from this ruling, contending that: (1) the evidence established that defendants never applied for or took reasonable steps to obtain a mortgage within the time frame set forth in the mortgage contingency clause; (2) defendants never sought or applied for the precise mortgage described in the mortgage contingency clause; and (3) defendant Rose failed to apply for a mortgage or submit financial information to any financial institution.

The trial court, however, awarded plaintiffs $3,000 under count II of their complaint, in which they sought recovery pursuant to a letter agreement whereby defendants agreed to pay them that amount if the transaction did not close. The court also awarded plaintiffs attorney fees totaling $1,762.50 after finding that defendants erroneously denied a particular fact which plaintiffs had propounded in their request to admit. Finally, the trial court awarded plaintiffs $858 as reimbursement for the expense of obtaining a title report and survey, which they ordered after defendant Forloine assured them that the closing would occur as scheduled. Defendants have filed a cross-appeal challenging these awards.

The relevant facts are as follows. On June 14, 1990, plaintiffs entered into the subject contract and accompanying letter agreement with defendants, whereby defendants were to purchase plaintiffs' home located at 2543 North Burling in Chicago. In the letter agreement, the parties specified that defendants would pay plaintiffs $3,000 if the transaction did not close. The contract, as modified by a June 25, 1990, letter agreement, required defendants to deposit $45,800 as earnest money with Near North Title, which they did. The closing on the sale was set to occur on October 2, 1990.

Paragraph 3(c) of the contract contained the mortgage contingency clause at issue, which provided:

> "This contract is contingent upon Purchaser securing within 30 days after acceptance hereof a commitment for a fixed rate mortgage \*\*\* for $370,000, the interest rate not to exceed 10.5% per annum, amortized over 30 years, payable monthly, loan fee not to exceed 4%, plus appraisal and credit report fee, if any. \*\*\* If Purchaser does not obtain such commitment, Purchaser shall notify Seller in writing within said number of days. If Seller is not so notified, it shall be conclusively presumed that Purchaser has secured such commitment or will purchase said property without mortgage financing. \*\*\*"

Paragraph 5 of the contract provided, in relevant part:

> "If this contract is terminated without Purchaser's fault, the earnest money shall be returned to the Purchaser, but such refund shall not release Seller from Seller's obligation under this contract. If the termination is caused by the Purchaser's fault, then, at the option of the Seller, and upon notice to Purchaser, the earnest money shall be forfeited and applied first to payment of Broker's commission and any expenses incurred, and the balance paid to Seller."

Following plaintiffs' acceptance of the contract on June 14, 1990, Forloine proceeded to contact various financial institutions regarding financing. Rose was not named as a co-borrower in any inquiry Forloine made to the various financial institutions or on any applications he subsequently submitted. Forloine testified that Rose was not named as a co-borrower because her income in 1990 was "negligible." He acknowledged that in 1989, Rose earned approximately $17,000. Under the contract, defendants had until July 14, 1990, to obtain financing or to notify plaintiffs of their inability to do so. Forloine testified that he was ideally seeking a combination acquisition/ rehabilitation loan totaling approximately $780,000, as he intended to perform extensive renovation work on the property, but informed every lender he contacted that he would accept just the acquisition loan and seek rehabilitation financing elsewhere. It is undisputed that Forloine did not submit a written loan application to any financial institution until after the expiration of the 30-day period.

Forloine contacted Savings of America on June 6, 1990. Forloine spoke to a loan officer by the name of Ms. Holmes about obtaining a mortgage and supplemental funds for renovation. Forloine stated that he met with Holmes on June 25 and exchanged information, but he could not recall anything that was said at the meeting. Holmes subsequently left the bank, and consequently Forloine had no further contact there.

Forloine contacted a representative of First Nationwide Bank orally on June 14, 1990, but did not recall the specifics of the conversation. He again contacted First Nationwide on June 19, this time in writing. Sometime prior to July 14, according to Forloine, he met with a bank representative and submitted detailed financial information. He again contacted the bank in writing on August 2 to confirm his interest in obtaining a combination acquisition/rehabilitation loan, but never heard anything further from that bank.

Forloine also stated that sometime prior to June 15, 1990, he called La Salle National Bank-Lake View, where he talked to Melanie Gahan, a loan officer. Forloine sent Gahan a letter on June 15 and attempted to follow up with additional information. Although Gahan expressed interest in making a loan to Forloine, he did not have any further contact with her until August 2, 1990. On August 6, 1990, Forloine submitted a written loan application with an accompanying letter explaining that his request was for a loan totaling $780,250. Forloine testified that on this loan application, and all others he submitted, he left the "Mortgage Applied For" space blank, preferring to let the bank fill it in once it determined how much he was eligible to borrow. Forloine's application with La Salle was subsequently rejected.

Forloine contacted Avondale Federal Savings and Loan on June 15, 1990. According to Forloine, he was told that Avondale did not offer mortgages in excess of $180,000. He had no further contact with this institution.

Forloine wrote Northern Trust on June 18, 1990, indicating an interest in a loan primarily for rehabilitation and capital improvement work on the subject property. In the letter, Forloine indicated that there would be a first mortgage on the property for 75% to 80% of its value. Because Forloine had a prior business relationship with Northern Trust, the bank already possessed detailed financial information on Forloine. Sometime in June or early July, discussions arose concerning the possibility of the bank providing both the acquisition and rehabilitation loan on the subject property. On July 31, 1990, Forloine wrote to the bank expressing his desire for a combination mortgage. In August, the bank received Forloine's completed application, which was ultimately approved for only 80% of the purchase price, or $366,400. This was $3,600 less than the $370,000 specified in the mortgage contingency clause.

On June 24, 1990, Forloine attempted to contact First Chicago Bank of Lincoln Park. On July 3, he spoke on the telephone with Lori Rudman, a loan officer, with whom he met a few days later. During that meeting, Forloine told Rudman that he was looking for

both purchase and construction financing. Rudman told Forloine that the bank would require certain information, but he did not follow up within the 30-day period. He stated that he attempted to follow up but Rudman told him that she was busy. Forloine testified that, as with all the lenders he contacted, he told Rudman that he was willing to accept just acquisition financing and seek rehabilitation financing elsewhere. In September 1990, he submitted a formal written loan application to First Chicago requesting a combination acquisition/rehabilitation loan.

Forloine also contacted Old Kent Bank. He stated that he telephoned the bank on June 26, and then on June 27 wrote to Robert Pirko, a loan officer, expressing his interest in obtaining acquisition financing even if rehabilitation financing was unavailable. Forloine met with Pirko on June 28 to discuss Forloine's need for acquisition and rehabilitation financing. According to Forloine, during the meeting or shortly thereafter, he gave Pirko some personal and financial information and sent additional information on August 2, 1990. The following day, Forloine submitted a written loan application. His application was subsequently rejected.

Finally, on July 12, 1990, Forloine contacted Chase Manhattan Bank and spoke with two loan officers. Forloine testified that he discussed the terms of available mortgage programs with the individuals. Forloine submitted additional personal and financial information to them shortly thereafter, but had no further contact with anyone from Chase during the 30-day period.

On July 9, 1990, defendants notified plaintiffs that they had not obtained a commitment for the subject mortgage and requested an extension of the 30-day period, or, if plaintiffs were unwilling to give such an extension, advised that the contract should be deemed terminated. Plaintiffs refused to extend the period and informed defendants that they had no right to invoke the mortgage contingency clause because they had not fulfilled their obligations under that clause. Because plaintiffs refused to extend the period, defendants considered the contract to be null and void. However, defendants continued to pursue combination financing from a number of banks after the 30-day period had expired in the hope that the contract could be reinstated if they were successful in securing a mortgage.

On August 13, 1990, plaintiffs sent notice to defendants of their intent to close the subject transaction on October 2, 1990. Defendants did not respond to this notice, continued to contact banks, but subsequently declined to go through with the closing because of their inability to obtain financing.

On November 27, 1990, plaintiffs filed their complaint in this

matter, and the trial was held on May 19, 1992. In making its ruling, the trial court acknowledged that Forloine did not submit a written application for a mortgage during the 30-day period, but nevertheless concluded that Forloine had made a good-faith and reasonable effort during that period to obtain the mortgage described in the contract.

Plaintiffs contend that the trial court erred in finding that defendants made a good-faith and reasonable effort to obtain, within the 30-day period, the financing specified in the mortgage contingency clause. Whether a party to a contract has acted reasonably and in good faith are questions of fact exclusively within the province of the trier of fact, to be determined by assessing the individual circumstances surrounding the parties' actions. *Honkomp v. Dixon* (1981), 97 Ill. App. 3d 476, 480, 422 N.E.2d 949, 951-52.

In determining whether the trial court, sitting as the trier of fact, erred in this case in finding that defendants acted reasonably and in good faith, this court will not reweigh the evidence or substitute our judgment for that of the trial court. (*Zaderaka v. Illinois Human Rights Comm'n* (1989), 131 Ill. 2d 172, 180, 545 N.E.2d 684, 688.) The trial court's findings of fact are entitled to deference, especially those involving credibility determinations (*Zaderaka*, 131 Ill. 2d at 180, 545 N.E.2d at 688), and will not be set aside on appeal unless they are against the manifest weight of the evidence. (*State Farm Mutual Automobile Insurance Co. v. Dreher* (1989), 190 Ill. App. 3d 182, 184-85, 547 N.E.2d 1, 3.) For a finding or judgment to be against the manifest weight of the evidence, an opposite conclusion must be clearly evident. (*In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 655, 458 N.E.2d 637, 642.) After carefully reviewing the record, and applying the foregoing standard, we cannot say that the trial court's finding was contrary to the manifest weight of the evidence.

It is a basic tenet of contract law that implied in every contract is a duty of good faith and fair dealing. (*Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 730, 523 N.E.2d 30, 34; *Osten v. Shah* (1982), 104 Ill. App. 3d 784, 786, 433 N.E.2d 294, 296.) Citing *Shah*, plaintiffs contend that there can be no finding of good faith on the part of defendants because they failed to "use reasonable efforts" during the 30-day period "to obtain the specified financing." (*Shah*, 104 Ill. App. 3d at 786, 433 N.E.2d at 296.) Under the circumstances in this case, plaintiffs argue, "reasonable efforts" meant that defendants were required to submit a written loan application for the mortgage amount specified in the contingency clause. We do not agree. In our view, the record supports the trial court's finding that defendants did in fact make a reasonable and good-faith effort to obtain the specified financing, notwithstanding their failure to submit a written mortgage application.

■ The record reveals that Forloine contacted nine lenders, both orally and in writing, during the 30-day period to inquire about the possibility of obtaining financing on the subject property. In his answer to plaintiffs' interrogatories, Forloine listed the names of the persons whom he contacted at the various financial institutions, indicated the numerous dates on which such contacts were made, and specified whether the contacts were made orally or in writing. Forloine testified that he submitted personal and financial information to various lenders, including Old Kent Bank, Savings of America and First Nationwide Bank, during the 30-day period. Northern Trust already possessed such information because Forloine had an ongoing business relationship with that institution. As defendants point out, the written documentation to the various lenders clearly shows that the lenders knew that Forloine was in the process of applying for financing even though he did not initially submit a written loan application form.

Moreover, contrary to plaintiffs' contention, the fact that Forloine informed the lenders whom he contacted that he was ideally seeking financing for both the acquisition and rehabilitation of the subject property does not negate the trial court's finding of good faith in seeking the mortgage described in the mortgage contingency clause, because Forloine testified that he made clear to the lenders that he was willing to accept only acquisition financing and would seek a rehabilitation loan elsewhere if he could not qualify for both. In this regard, the record indicates, for instance, that although Forloine requested that Northern Trust consider a combination loan totaling approximately $800,000, the bank subsequently rejected this amount and offered him instead an acquisition loan for $366,400. In addition, the record contains copies of the various written applications Forloine submitted in which he left the "Mortgage Applied For" space blank for the lenders to fill in once they determined how much he was qualified to borrow.

Plaintiffs nevertheless maintain that defendants' failure to submit a written mortgage application establishes bad faith because several lenders "gave Forloine sufficient encouragement to warrant further action on his part" and Forloine knew that a written application would be required before a loan would be approved. We note initially that, contrary to the cases plaintiffs cite in support of this position (*e.g.*, *Scherer v. Nase* (1991), 405 Pa. Super. 37, 591 A.2d 1086; *Shah*, 104 Ill. App. 3d 784, 433 N.E.2d 294), the subject contract did not expressly require defendants to submit a written application for a mortgage within the 30 days. All that was required was a good-faith effort by defendants to secure a commitment for the mortgage described in the contract.

We consider Forloine's testimony describing how he viewed the written application form to be further evidence of his good faith. Forloine stated that he viewed the completion of a written loan application as the last step in the application process. According to Forloine, he did not submit a signed application during the 30 days because he "had not reached that stage of [his] discussions with [the] various lenders." Forloine stated that he perceived the formal application form as a contract, "meaning that you have selected a specific lender with which you are ready to put down earnest money [*i.e.*, a loan application fee]." In Forloine's view, "[w]e hadn't reached that step yet."

Because he had not yet reached, by nearly the end of the 30-day period, the stage at which he considered the submission of a written loan application to be appropriate, Forloine wrote to plaintiffs requesting a 30-day extension. Notwithstanding plaintiffs' knowledge of Forloine's efforts in attempting to obtain financing and although the anticipated closing date was more than two months away, plaintiffs nevertheless refused to extend the period because Forloine had not submitted a written loan application to any financial institution. Plaintiffs told Forloine, however, that they "would be glad to consider granting him an extension" if he formally applied for a mortgage and they received assurances directly from the lender that he would qualify for the mortgage.

Even after the 30-day period had expired, defendants still continued to seek a mortgage on the subject property, eventually submitting seven written loan applications to various lenders. Forloine testified that he and his wife "fell in love with the house," and continued to seek financing after the 30 days in the hope that plaintiffs would sell them the property if and when they obtained a mortgage. Forloine also testified that he and his wife were so serious about purchasing the property that, in addition to contacting the various lenders, they borrowed the earnest money at issue, and hired a building inspector to inspect the property as well as an architect to draw up plans for the rehabilitation of the property. In our view, these actions by Forloine further support the trial court's finding that Forloine acted in good faith in seeking financing during the 30-day period.

We do not perceive this as a situation in which a prospective purchaser made sham attempts at securing a mortgage so as to escape his obligations under a real estate contract. On the contrary, the record indicates that defendants sought diligently to obtain financing and did not close on the scheduled date because no lender had yet approved a loan for the amount specified in the contract. Notably,

Northern Trust, with which Forloine had an ongoing business relationship, declined Forloine's request for acquisition financing in the amount of $370,000, limiting him instead to $366,400. The record also indicates that at least two other lenders rejected Forloine's request for the subject mortgage prior to the scheduled October closing date. Thus, even had he submitted a written application during the 30 days, the result of not being able to secure a loan commitment for the subject mortgage would likely have been the same.

As a final matter, we note that plaintiffs have offered no evidence to support their apparent contention that defendants would have received a mortgage had Rose's 1989 income of $17,000 been disclosed to the various lenders. The record is devoid of any evidence that lack of financial resources was the sole reason defendants did not obtain the mortgage. Thus, we reject plaintiffs' contention that the trial court's finding should be reversed for failure of defendants to disclose Rose's 1989 income.

For the foregoing reasons, we affirm that portion of the trial court's judgment awarding the earnest money to defendants.

■ We turn now to defendants' cross-appeal challenging the trial court's award of attorney fees to plaintiffs as a result of defendants' improper denial of plaintiffs' request to admit the following fact:

"At no time prior to July 14, 1990 did either defendant[ ] apply to any financial institution for a mortgage in the amount of $370,000.00, with interest not to exceed 10.5% per annum, amortized over 30 years, payable monthly, with loan fee not to exceed 4%, for the purchase of the property commonly known as North Burling, Chicago, Illinois."

After defendants denied the foregoing paragraph, plaintiffs took Forloine's deposition. Forloine was asked about the denial of plaintiffs' request to admit, and he again denied that he had failed to apply for a mortgage within the contractual time period, stating that he had been "in various stages of the application process with a number of *** lending institutions" and had submitted "a number of application forms including financial statements."

Immediately prior to trial, the parties entered into certain stipulations of fact, which included a stipulation that defendants did not submit a formal written application for the mortgage specified in the contract to any lender during the 30-day period. Forloine acknowledged at trial his awareness that the submission of a written loan application would eventually be required to obtain a loan.

As a consequence of the improper denial, the court entered sanctions against defendants in the amount of $1,762.50, representing

the attorney fees incurred by plaintiffs in proving the truth of the fact which defendants denied. Plaintiffs accomplished the prove up by deposing Forloine and finalizing the trial stipulation filed by the parties.

The imposition of sanctions is a matter within the broad discretion of the trial court, and we will not overturn the trial court's decision in this regard absent an abuse of discretion. (*Wegman v. Pratt* (1991), 219 Ill. App. 3d 883, 891, 579 N.E.2d 1035, 1041.) Supreme Court Rule 219(b) (134 Ill. 2d R. 219(b)) governs the imposition of sanctions as a result of a party's refusal to admit a particular fact. Rule 219(b) provides relief, including reasonable attorney fees, for a party who is forced to prove the truth of a matter of fact which is denied by the opposing party in response to a request to admit.

Applying Rule 219(b) to the case at bar, we conclude that the trial court did not abuse its discretion in awarding plaintiffs what we agree is a reasonable amount for the attorney fees they incurred in proving that defendants never "applied" for the mortgage specified in the contract. The truth of this particular fact was the crux of plaintiffs' theory of the case and thus was of "substantial importance" within the meaning of Rule 219(b) (134 Ill. 2d R. 219(b)). We reject defendants' contention that they "orally applied" for the subject mortgage within the 30-day period. The record does not support such a finding. Accordingly, we affirm the trial court's award of sanctions totaling $1,762.50.

■ We likewise affirm the trial court's award of damages to plaintiffs in the amount of $3,000, pursuant to the parties' letter agreement dated June 14, 1990, in which defendants agreed to pay plaintiffs $3,000 if the transaction did not close. Defendants do not contest this obligation on their part.

As to the $858 award to plaintiffs as reimbursement for the expense of obtaining a title commitment and survey, we agree with defendants that the trial court erred. Plaintiffs sought these damages apparently on the basis of fraud, alleging that Forloine falsely and wrongfully assured them in August 1990 that the closing would occur as scheduled and that they relied on this misrepresentation to their detriment. While the trial court heard testimony supporting one element of fraud, namely, detrimental reliance, no evidence was presented to support any of the other elements of fraud. (See *Siegel v. Levy Organization Development Co.* (1992), 153 Ill. 2d 534, 607 N.E.2d 194.) Indeed, the record is devoid of any factual basis for determining the issue of fraud.

Significantly, plaintiffs initially raised the theory of fraud in a

130

separate count of their complaint, but the trial court subsequently dismissed this count. Plaintiffs have not appealed the trial court's order granting the dismissal. There being no other basis, either in the pleadings or in the record of proceedings in the trial court, to support the award of damages for the expense of obtaining a title commitment and survey, we conclude that the portion of the order awarding such damages must be vacated.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and vacated in part.

Affirmed in part; vacated in part.

EGAN and GIANNIS, JJ., concur.