*In re* ESTATE OF LOUIS DEFILIPPIS, Deceased (Bernadette Defilippis, Petitioner-Appellee, v. Diane Defilippis *et al.*, Respondents-Appellants).

First District (5th Division)   Nos. 1—95—3365, 1—95—3366 cons.

Opinion filed June 6, 1997.—Rehearing denied July 2, 1997.

Ronald V. Hirst and Bryan David Schultz, both of Chicago, for appellants.

Paul F. Schofield, of Siebel, Whipple & Schofield, of Chicago, for appellee.

JUSTICE SOUTH delivered the opinion of the court:

Petitioner, Bernadette Defilippis (Bernadette), filed a citation to recover two condominium units that Louis Defilippis, Sr. (Louis Sr.), her deceased husband, transferred to his three children from a previous marriage, Diane Defilippis, James Defilippis and Louis A. Defilippis, Jr. (collectively respondents). The circuit court of Cook County determined that Louis Sr. lacked present donative intent to transfer the property to respondents and entered judgment in favor of Bernadette. Respondents appeal.

Bernadette and Louis Sr. were married in 1977. They lived together at Louis Sr.'s residence in Chicago, Illinois, for a short period but separated in 1979 and lived apart after 1979. After the separation, Louis Sr. remained at the residence with respondents, his three adult children from a previous marriage. Bernadette relocated to a condominium unit in Oak Lawn, Illinois. Although the couple contemplated divorce, Bernadette and Louis Sr. remained legally married until Louis Sr.'s death in 1992.

In 1979, Bernadette and Louis Sr. acquired condominium units 2D and 2F. Title to units 2D and 2F was initially held by the First National Bank of Evergreen Park, as trustee, under a land trust. Bernadette and Louis Sr. were the sole beneficiaries of this land trust. In 1980, Bernadette and Louis Sr. directed the bank to transfer units 2D and 2F out of the land trust and issue them quitclaim deeds for these units. Bernadette and Louis Sr. each held an undivided one-half interest in units 2D and 2F, as tenants in common.

A third condominium unit, 3F, was also acquired in 1979 at or about the same time units 2D and 2F were acquired. Unit 3F was also placed in a land trust. Louis Sr. owned an undivided one-half interest, and his daughter, Diane, owned the other undivided one-half interest in unit 3F.

In 1984, Louis Sr. became ill with cancer. He consulted his attorney concerning his will and the procedure for conveying his interest in condominium units 2D and 3F to respondents. Louis Sr.'s attorney advised him that, after giving units 2D and 3F to respondents, he would no longer have the right to direct the sale of the property, the control of it, or do anything with the property. His attorney further advised him that his children, respondents, could do anything they wanted with the property once he gave it to them.

In order to convey unit 2D to respondents, Louis Sr. agreed to quitclaim his undivided one-half interest in unit 2F to Bernadette in exchange for her undivided one-half interest in unit 2D. Louis Sr.'s attorney sent Bernadette a letter outlining the proposed exchange and advising Bernadette that, if she agreed to the exchange, she would no longer have any interest in unit 2D. Bernadette was also advised that she should retain her own attorney to represent her in connection with the transaction.

In June 1984, Bernadette and Louis Sr. agreed to exchange interests in condominium units 2F and 2D. In the exchange, Louis Sr. quit claimed his interest in 2F to Bernadette, and Bernadette and Louis Sr. deeded their interest in unit 2D to a newly created land trust. Respondents were the sole beneficiaries of the land trust and held exclusive power of direction thereto.

Louis Sr. also assigned his beneficial interest in unit 3F to respondents. Respondent Diane, who already owned an undivided one-half beneficial interest in unit 3F, also assigned her beneficial interest in unit 3F to respondents. As a result, respondents became the sole beneficiaries of the land trust and beneficial owners of unit 3F.

In September 1986, unit 3F was sold to Martin and Mary Ann Terpstra for $38,000. The Terpstras paid $8,000 in cash to Louis Sr. and executed a mortgage for $30,000 to respondents. Martin Terpstra testified that, when negotiating for the purchase of unit 3F, he dealt directly with Louis Sr. However, Martin Terpstra testified that it was his understanding that respondents owned unit 3F and that he purchased unit 3F from respondents. The Terpstras eventually sold unit 3F to a third party and paid respondents the balance due on the mortgage.

In 1992, after Louis Sr.'s death, Diane moved from the family residence into unit 2D. That same year, Diane conveyed her interest in the family residence to her brothers, James and Louis Jr., and they in turn directed the bank, as trustee of the land trust, to convey unit 2D to Diane.

From the time units 2D and 3F were purchased in 1979, they were used as rental properties. Unit 2D was used as rental property until Diane moved into the unit in 1992. Unit 3F was rented to the Terpstras until 1986, when they purchased the unit and began making mortgage payments.

Louis Jr. testified that Louis Sr. managed the properties to keep himself busy during retirement and to help respondents. He further testified that the rent and mortgage payments from units 2D and 3F were placed in a "house account" from which the family's common

expenses were paid and that the taxes, assessments and other expenses relative to units 2D and 3F were also paid from this "house account."

Louis Sr.'s accountant testified that he prepared Louis Sr.'s personal income tax returns from 1987 until Louis Sr.'s death in 1992. On the returns for 1987 and later years, Louis Sr. reported the condominium rental income, mortgage interest payments, condominium assessments and depreciation deductions for units 2D and 3F.

On December 8, 1994, Louis Sr.'s will dated June 18, 1984, was admitted to probate. Bernadette renounced the will and filed a petition for a discovery citation, which the probate court granted. On February 9, 1995, Bernadette filed a citation for recovery seeking an order requiring respondents to deliver to the estate condominium unit 2D and the Terpstras' mortgage.

On May 22, 1995, the circuit court ruled in favor of Bernadette and granted her a statutory marital share of unit 2D and the Terpstras' mortgage on 3F. The circuit court ruled that Louis Sr.'s 1984 transfers of units 2D and 3F to respondents were invalid based on lack of donative intent and that Louis Sr., "in effect, had a life estate."

The circuit court ordered Diane to convey an undivided one-half interest in unit 2D to the estate. The circuit court also ordered respondents to pay $7,295.20 to the estate, representing one-half of the Terpstras' mortgage balance plus 5% prejudgment interest from the date the Terpstras sold unit 3F. On July 12, 1995, respondents filed a motion for reconsideration, which was denied on August 29, 1995. This appeal followed.

## OPINION

■ The standard of review on appeal is whether the circuit court's ruling is contrary to the manifest weight of the evidence. *In re Marriage of Simmons*, 221 Ill. App. 3d 89, 581 N.E.2d 716 (1991).

On appeal, Bernadette contends that Louis Sr.'s transfers of units 2D and 3F was a fraud on her marital rights. Specifically, Bernadette argues that Louis Sr. intended to maintain his control and rights of ownership after the 1984 transfers because he acted like an owner by reporting rent and mortgage payments as income and took deductions for expenses for the condominiums, attended condominium meetings and voted shares, negotiated the sale of unit 3F and received proceeds therefrom.

■ The marital right in question is the right of a surviving spouse to share in the estate of his or her deceased spouse. The right was created by statute, which provides in relevant part:

"Renunciation of will by spouse. (a) If a will is renounced by the testator's surviving spouse, whether or not the will contains any provision for the benefit of the surviving spouse, the surviving spouse is entitled to the following share of the testator's estate after payment of all just claims: $^1$/$_3$ of the entire estate if the testator leaves a descendant or $^1$/$_2$ of the entire estate if the testator leaves no descendant." 755 ILCS 5/2—8 (West 1994).

Prior to the death of the decedent, the spouse possesses absolutely no claim with respect to this statute against any of the testator's individually held assets, and the spouse's interest exists only as an expectancy. *Toman v. Svoboda* 39 Ill. App. 3d 394, 397, 349 N.E.2d 668, 672 (1976).

■ Under Illinois law, a property owner has an absolute right to dispose of his or her property during his or her lifetime in any manner he or she sees fit. The owner may convey his or her property even though the transfer may be for the sole purpose of minimizing or defeating the statutory marital interest of the surviving spouse. *Johnson v. La Grange State Bank*, 73 Ill. 2d 342, 383 N.E.2d 185 (1978). The conveyance is not subject to defeasance by the surviving spouse, unless the transfer lacks the essential element of present donative intent and is, therefore, colorable or illusory and tantamount to a fraud on the surviving spouse's marital rights. *Johnson*, 73 Ill. 2d 342, 383 N.E.2d 185; *Payne v. River Forest State Bank & Trust Co.*, 81 Ill. App. 3d 1128, 401 N.E.2d 1229 (1980). Because a surviving spouse only has an interest in property that becomes a part of the decedent's estate, a valid *inter vivos* conveyance of a property interest would not become a part of the decedent's estate.

■ Additionally, the Illinois General Assembly set forth the applicable test for determining when an *inter vivos* transfer is invalid to defeat the marital right of the surviving spouse. Section 1 of the Lifetime Transfer of Property Act provides:

"§ 1. An otherwise valid transfer of property, in trust or otherwise, by a decedent during his or her lifetime, shall not, in the absence of an *intent to defraud*, be invalid, in whole or in part, on the ground that it is illusory because the decedent retained any power or right with respect to the property." (Emphasis added.) 755 ILCS 25/1 (West 1994).

Thus, in order to successfully challenge an *inter vivos* transfer, a party must show intent to defraud. *In re Estate of Mocny*, 257 Ill. App. 3d 291, 630 N.E.2d 87 (1993).

The supreme court in *Johnson* explained that intent to defraud the surviving spouse of his or her marital rights does not involve the traditional meaning of fraud. Rather, intent to defraud refers to a

transfer that is illusory or colorable. A transfer that is illusory is one that takes back all that it gives. A transfer that is colorable is one that appears absolute on its face but due to some tacit or secret understanding between the transferor and the transferee is in fact not a transfer because the parties intended that ownership be retained by the transferor. *Johnson*, 73 Ill. 2d at 359, 383 N.E.2d at 193. In either case, the question is really whether there was present donative intent or, instead, an intent to retain complete ownership. *Johnson*, 73 Ill. 2d at 359, 383 N.E.2d at 193.

Where present donative intent exists, the transfer is valid and effective to defeat the marital interest. *Mocny*, 257 Ill. App. 3d 291, 630 N.E.2d 87. Where present donative intent is absent, the transfer is treated as a disposition by will and is not effective to defeat the marital interest. *Mocny*, 257 Ill. App. 3d 291, 630 N.E.2d 87.

■ Moreover, when a parent places title in a child, there is a presumption that the transfer is a valid gift or advancement, and the burden is on the one questioning the gift to overcome the presumption by clear and convincing evidence. *Nordlund v. Nordlund,* 116 Ill. App. 3d 223, 452 N.E.2d 18 (1983); *In re Marriage of Brown*, 110 Ill. App. 3d 782, 784, 443 N.E.2d 11, 13 (1982).

■ It is well settled that reservation of a life interest, power to revoke or modify, and power to control the trustee in the administration of a trust does not render the trust testamentary. *Farkas v. Williams*, 5 Ill. 2d 417, 431, 125 N.E.2d 600, 607-08 (1955); *Toman*, 39 Ill. App. 3d 394, 349 N.E.2d 668; *Johnson*, 73 Ill. 2d 342, 383 N.E.2d 185; *Payne*, 81 Ill. App. 3d at 1133, 401 N.E.2d at 1233. Often the donor-spouse holds back for himself the power to manage the property directly and indirectly. He provides that he himself shall have the power to sell, lease, mortgage, pay taxes, make investments, and perform other acts of trust administration or that he shall have authority to direct the trustees as to how they shall perform these duties. These reservations have not generally been deemed to show that the donor-spouse remains during his or her life the master of the property to such an extent as to make his or her gift to the donee testamentary. So long as the trust continues, the donee has equitable interests, no matter who acts for the donee in protecting those interests, whether it be the trustee or donor-spouse. *Payne*, 81 Ill. App. 3d 1128, 401 N.E.2d 1229.

■ Nevertheless, where a life estate is reserved in the property, the existence of a present intent to give now the future fee interest must be subjected to special scrutiny to make certain that the donative intent is present and not merely testamentary. *Toman*, 39 Ill.

App. 3d 394, 349 N.E.2d 668. Some elements of the special scrutiny to be applied are the degree of control the donor exerted over the donee's interest in the property; the secretive manner, or lack thereof, in which the decedent acted regarding the surviving spouse; what the decedent might have said to others as to his intent in making the apparent gift; the value of the decedent's estate and the value of the property left by him to the surviving spouse; the proximity in time between the donative transfer and the donor's death; and all factors that might indicate an intent to defraud the surviving spouse of her statutory marital share. *In re Estate of Puetz*, 167 Ill. App. 3d 807, 521 N.E.2d 1277 (1988); *Toman*, 39 Ill. App. 3d 394, 349 N.E.2d 668; *Johnson*, 73 Ill. 2d 342, 383 N.E.2d 185.

■ On appeal, respondents argue that the circuit court erred in not invoking the doctrine of equitable estoppel against Bernadette in view of her participation in the conveyance of unit 2D to respondents, that she directly benefited from the transaction and was aware of the transfers relating to unit 3F. The evidence adduced in the circuit court did not establish that Bernadette was aware that she had transferred her interest in unit 2D to respondents or that she was aware that respondents were the sole beneficiaries of the mortgage proceeds from the sale of unit 3F.

Bernadette testified that she and Louis Sr. "switched" their respective interests in units 2D and 2F and that she took unit 2F and Louis Sr. took unit 2D. Bernadette further testified that she was unaware that Louis Sr. had subsequently transferred unit 2D to respondents and that she believed that Louis Sr. continued to own unit 2D after 1984.

Although the evidence established that Bernadette may have been aware of the sale of unit 3F to Martin and Mary Ann Terpstra, it did not establish that Bernadette was aware that respondents, as opposed to Louis Sr., were the sole beneficiaries of the mortgage proceeds from the sale. Therefore, the circuit court did not err in not invoking the doctrine of equitable estoppel against Bernadette.

■ However, notwithstanding the fact that the circuit court determined that Louis Sr. "treated the property during his lifetime as if it were his own" and that "[h]e, in effect, had a life estate," there was no formal life estate reserved by Louis Sr. once he transferred units 2D and 3F to respondents. Although Louis Sr. managed the property after the transfers and received proceeds derived from the property, he did so strictly under the authorization of respondents, who possessed exclusive legal right to control the property.

Furthermore, while retention of a life interest is relevant on the

issue of the existence of present donative intent, it is not controlling. Such evidence merely establishes that the precise subject matter of the gifts that Louis Sr. intended to give was not the present fee interest in the condominiums but was a vested future fee interest only. *Farkas v. Williams*, 5 Ill. 2d at 431, 125 N.E.2d at 607-08; *Toman*, 39 Ill. App. 3d 394, 349 N.E.2d 668; *Johnson*, 73 Ill. 2d 342, 383 N.E.2d 185. Hence, the presumption as to the validity of the transfers of units 2D and 3F to respondents as gifts from their parent, Louis Sr., was not rebutted by clear and convincing evidence that Louis Sr. lacked present donative intent to render the transfers testamentary.

There is, however, one type of real gift that will not deprive the surviving spouse of his or her statutory marital right. That type of real gift is one in which the donor-spouse, under the law applicable to the method of gift used, lawfully retains such a degree of control over the donee's interest in the property that, for purposes of the statutory marital right of the surviving spouse, the transfer of title to the donee must be regarded as quasi-testamentary, and the transfer is voidable to the extent required to protect the said statutory marital right. *Toman*, 39 Ill. App. 3d at 403, 349 N.E.2d at 676.

The exception relates to certain *inter vivos* donative transfers of legal title under the applicable law of property or equitable title under the applicable law of trusts and to the creation of contract rights in certain donee beneficiaries under the applicable law of contracts. Such *inter vivos* donative transfers, though real under the respective applicable law so as to vest presently existing property rights in the donee, nevertheless create in the donee mere defeasibly vested rights that are defeasible at the will of the donor during the donor's lifetime. *Toman*, 39 Ill. App. 3d at 403, 349 N.E.2d at 676.

The usual form of complete control by the donor is his or her retention for life of the power to revoke the transaction and thereby defeat the presently existing rights of the donee. In the case, however, of transfers of equitable title to a donee by means of an *inter vivos* revocable trust, some further retention of control by the donor is required, namely, the retention of some substantial power over the trust *res* that would normally be vested in the trustee, as, for example, the power to invest and reinvest the trust funds. *Toman*, 39 Ill. App. 3d at 403, 349 N.E.2d at 676.

In the present case, there is no evidence that, during Louis Sr.'s lifetime, he retained such complete control over the presently existing rights of respondents that, for purposes of the statutory marital right of Bernadette, the transfers of title to the land trust with respondents as sole beneficiaries must be regarded as quasi-testamentary and the transfers voidable to the extent required to

protect Bernadette's statutory marital right. As previously indicated, although Louis Sr. managed the property directly and continued to receive benefits from the property, he did so strictly under the authority of respondents, who solely held legal right to control the property.

After being advised by his attorney that his children, respondents, could do anything they wanted with the property once the transfers were complete, Louis Sr. elected to relinquish to respondents all legal rights to govern the affairs of the property. Louis Sr. retained no legal right to revoke the transfers of units 2D and 3F to respondents. He retained no power of direction to deal with the titles to units 2D and 3F or to manage and control the property. Nor was Louis Sr. the named beneficiary of the mortgage executed to secure the $30,000 note for the sale of unit 3F.

The fact that respondents shared or gave the earnings, avails and proceeds from units 2D and 3F to their father, Louis Sr., and that Louis Sr. reported the income and expenses on his tax returns, did not obviate the fact that Louis Sr. retained no legal right to control unit 2D or to receive the mortgage proceeds from the sale of unit 3F. Respondents, alone, as sole beneficiaries of the land trust containing unit 2D and the mortgage proceeds from the sale of unit 3F possessed exclusive right to control the property. Based on the foregoing, it cannot be held that Louis Sr. lacked present donative intent to transfer units 2D and 3F to respondents and that the 1984 transfers were merely testamentary.

Accordingly, the order of the circuit court granting one-half interest in unit 2D and $7,295.20, representing one-half of the Terpstras' mortgage balance plus 5% prejudgment interest from the date the Terpstras sold unit 3F, to the estate of Louis Sr. is reversed.

Reversed.

HOFFMAN and HOURIHANE, JJ., concur.