JUDGMENT SERVICES CORPORATION, Plaintiff-Appellant, v. KATHLEEN K. SULLIVAN *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—99—3091

Opinion filed March 23, 2001.—Rehearing denied April 27, 2001.

152

BUCKLEY, J., dissenting.

Gomberg, Sharfman, Gold & Ostler, P.C., of Chicago (Raymond J. Ostler and Maureseta T. Hawkins, of counsel), for appellant.

Collins & Bargione, of Chicago (George B. Collins and Christopher Bargione, of counsel), for appellees.

JUSTICE GALLAGHER delivered the opinion of the court:

Defendant Kathleen Sullivan and her husband, John Sullivan, were married on July 23, 1966. On May 19, 1972, Kathleen and John Sullivan purchased a home in Wilmette, Illinois, for $58,000. On October 29, 1996, plaintiff, Judgment Services Corporation (JSC), obtained a sheriff's deed to the property. The sheriff's deed conveyed John's interest in his residence to JSC. On October 20, 1997, JSC filed its complaint for partition asking to apportion the interests of JSC and Kathleen Sullivan. On May 6, 1999, after a bench trial, the trial court held that John Sullivan never held an ownership interest in the property. In so doing, the trial court found in favor of Kathleen Sullivan, who had argued that, even though the deed to the property states that title was conveyed to John and Kathleen Sullivan as joint tenants, at the time she acquired title, a resulting trust was created by her parents, the Kanes. JSC now appeals. We reverse and remand.

In 1972, the Sullivans purchased the subject property from Lawrence and Alvera Hass for $58,000. The deed states that title was conveyed to John and Kathleen Sullivan as joint tenants.

At the time of the purchase, the Sullivans took out a purchase money mortgage in the original principal amount of $22,000. Although

no documentary evidence was presented, at trial, both Sullivans testified that Kathleen's father, William Kane, gave them a check for approximately $36,000. Kathleen Sullivan testified that her father wanted her and her children to have a house and he wanted to buy it for them. She also testified that she took title as a joint tenant with her husband, John Sullivan, and she wanted John's name on the deed. She also testified that it was not a condition of her receiving the funds from her father that title be only in her name. The property continued to be the Sullivans' residence from May 19, 1972, through the date of trial.

In 1991, a judgment was entered against John Sullivan in favor of the estate of Marie Barrett. A memorandum of judgment was recorded against the subject property. In addition, liens were also recorded by the Internal Revenue Service for a joint income tax liability of John and Kathleen Sullivan. John Sullivan testified that the amount of the lien was $54,118.27. This amount represented the federal taxes owed on their income for certain years.

On November 24, 1992, the Sullivans took out their current mortgage with Centennial Mortgage. The loan proceeds were used to pay off the Internal Revenue Service lien, as well as a prior mortgage and a judgment lien obligation of John Sullivan to La Salle Management. No payment was made to satisfy the judgment lien of the estate of Marie Barrett.

On October 23, 1993, another judgment was entered against John Sullivan in favor of Marijo Murphy for $123,181.50. A memorandum of judgment was recorded on October 27, 1993, and created a lien on the interest of John Sullivan in the subject property.

John Sullivan was a practicing attorney and testified that his area of practice included estates and trusts. John Sullivan was disbarred on May 19, 1994, based in part on his conversion of client funds. The Sullivans maintained title to the subject property in both their own names until July 15, 1994, at which time John Sullivan recorded a quitclaim deed conveying his interest in the property to Kathleen Sullivan. Sometime during 1994, John Sullivan filed for bankruptcy protection and received a discharge of all debts, with the exception of perfected liens.

On November 30, 1995, the estate of Marie Barrett caused the sheriff of Cook County to record a certificate of levy for the purpose of conducting a levy sale to satisfy its judgment. The levy sale occurred on October 29, 1996; the certificate of sale was recorded on November 6, 1999. Pursuant to section 12—132 of the Code of Civil Procedure (735 ILCS 5/12—132 (West 1996)), which governs enforcement of judgments and redemption by creditors, Beneficial Systems, Inc., as

assignee of Marijo Murphy, on April 11, 1997, redeemed the subject property from the estate of Marie Barrett levy sale; the redemption was confirmed on April 28, 1997. Beneficial Systems, Inc., caused a new certificate of levy to be recorded and noticed a new levy sale. On July 2, 1997, the new levy sale occurred. JSC, which is owned by the same two individuals who own Beneficial Systems, Inc., was the successful purchaser. A sheriff's deed was recorded on September 16, 1997.

On October 20, 1997, JSC filed the complaint for partition asking to apportion the interests in the subject property of JSC and Kathleen Sullivan, which led to the judgment of May 6, 1999, that is the subject of this appeal.

The standard of review we apply when a challenge is made to the trial court's ruling following a bench trial is whether the trial court's judgment is against the manifest weight of the evidence. *Bazydlo v. Volant*, 164 Ill. 2d 207, 215, 647 N.E.2d 273, 277 (1995). A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence. *Leonardi v. Loyola University*, 168 Ill. 2d 83, 106, 658 N.E.2d 450 (1995); *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 242, 665 N.E.2d 1260, 1274 (1996); *Bazydlo*, 164 Ill. 2d at 215, 647 N.E.2d at 277.

■ A resulting trust is created by operation of law and has its roots in the presumed intention of the parties. *In re Estate of Wilson*, 81 Ill. 2d 349, 355, 410 N.E.2d 23, 26 (1980). A resulting trust generally arises where one person purchases property with his own funds and allows title to be taken in the name of another. *In re Estate of Wilson*, 81 Ill. 2d at 355, 410 N.E.2d at 26. The burden of proof is upon the party seeking to establish a resulting trust, and the evidence must be clear, convincing and unmistakable. *In re Estate of Wilson*, 81 Ill. 2d at 356, 410 N.E.2d at 26.

■ Since the law surrounding resulting trusts was created to enforce the intent of the parties, certain rebuttable presumptions have evolved based on the relationship of the parties. *In re Estate of Wilson*, 81 Ill. 2d at 356, 410 N.E.2d at 26. For example, when property is transferred from one family member to another, a presumption arises in favor of a gift which will negate a resulting trust. *In re Estate of McCormick*, 262 Ill. App. 3d 163, 168-69, 634 N.E.2d 341, 345 (1994). A rebuttable presumption of a gift arises where a husband purchases property and (1) title is taken in the name of his spouse or (2) ownership is taken in joint tenancy with his wife. *In re Estate of Wilson*, 81 Ill. 2d at 356, 410 N.E.2d at 26. The rationale is that it is deemed to have been intended by the husband that the wife should have the

right to half the benefits for the life of each and, if she survives him, she should be the full owner. *In re Estate of Wilson*, 81 Ill. 2d at 356, 410 N.E.2d at 27. Illinois law also presumes a valid gift when a parent places title in a child, and the party seeking to rebut this presumption bears the burden of producing evidence to the contrary. *In re Estate of Defilippis*, 289 Ill. App. 3d 695, 701, 683 N.E.2d 453, 458 (1997); *In re Marriage of Wesselhoft*, 228 Ill. App. 3d 269, 591 N.E.2d 928 (1992); *In re Marriage of Rosen*, 126 Ill. App. 3d 766, 467 N.E.2d 962 (1984). The presumption of a gift arises, where a son or daughter is the transferee, because the transferee is the natural object of the bounty of the person paying the purchase price. *In re Estate of McCormick*, 262 Ill. App. 3d at 168, 634 N.E.2d at 345. Again, in all instances, the burden is upon one questioning the gift to overcome the presumption by clear, convincing, unequivocal and unmistakable evidence. See, *e.g.*, *In re Estate of Wilson*, 81 Ill. 2d at 356, 410 N.E.2d at 27; *In re Estate of Koch*, 297 Ill. App. 3d 786, 788, 697 N.E.2d 931, 933 (1998). A resulting trust will not be sustained where the transaction can be construed in any other reasonable fashion. *In re Estate of McCormick*, 262 Ill. App. 3d at 168, 634 N.E.2d at 345.

■ The dissent ignores these well-settled principles when, citing *dicta* from *Hofferkamp v. Brehm*, 273 Ill. App. 3d 263 (1995), it states that "the mere payment of the consideration raises a *prima facie* presumption of a resulting trust." 321 Ill. App. 3d at 160. While we agree with this statement generally, it is an incomplete statement of the law and inapplicable to situations where, as here, the parties have a relationship. Indeed, the *Hofferkamp* court, in the sentence immediately following this statement, further explained: "Where a husband purchases property and title is taken in his and his wife's names, as joint tenants, there is a presumption of gift and not a presumption of resulting trust." *Hofferkamp*, 273 Ill. App. 3d at 272. The court then went on to decide that, as between parties who are "only engaged and not actually married" there is no gift presumption. *Hofferkamp*, 273 Ill. App. 3d at 272. *Hofferkamp* is totally inapposite.

Because the presumption that applies to the facts of this case is that the conveyance was a gift, the sole issue on appeal is whether Kathleen Sullivan presented clear and convincing evidence that a resulting trust in her father's favor should be imposed on John and Kathleen Sullivan's residence, the subject property. Although factual determinations in this type of case are best left to the trier of fact, such determinations may be overturned when they are against the manifest weight of the evidence or where there is clear and palpable error in some other respect. *In re Estate of McCormick*, 262 Ill. App. 3d at 168, 634 N.E.2d at 345. Applying the foregoing standards, we

agree with JSC that the trial court's decision was against the manifest weight of the evidence. JSC notes that the Sullivans failed to produce any documentary evidence to support their claims of payments made by the Kanes. The testimony offered by the Sullivans to rebut the presumption of a gift was, at times, contradictory and, arguably, was secondary evidence, hearsay and self-serving. Credibility determinations, however, are the province of the trial court. *Zeitz v. Village of Glenview*, 304 Ill. App. 3d 586, 592, 710 N.E.2d 849, 854 (1999). With its ruling, the trial court apparently resolved any questions pertaining to the credibility of the Sullivans as against JSC, as is within its province to do as trier of fact. Nonetheless, the trial court's judgment that John Sullivan never had an ownership interest in the subject property, with its implicit determination that Kathleen Sullivan rebutted the presumption of a gift by clear and convincing evidence, was contrary to the manifest weight of the evidence.

From our examination of the record, as a matter of law, Kathleen Sullivan failed to establish her burden by clear, convincing, unequivocal and unmistakable evidence that a resulting trust was intended. This is a heavy burden. As our supreme court has explained:

"Courts have defined 'clear and convincing' evidence most often as the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the truth of the proposition in question. Although stated in terms of reasonable doubt, courts consider clear and convincing evidence to be more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense." *Bazydlo v. Volant*, 164 Ill. 2d 207, 213, 647 N.E.2d 273, 276 (1995).[1]

Kathleen Sullivan contended at trial that a resulting trust in favor of Kathleen Sullivan's father or Kathleen Sullivan's parents, now both deceased, was created in 1972 at the time the Sullivans purchased the subject property. In finding in Kathleen Sullivan's favor, the trial court apparently agreed. John Sullivan testified that Kathleen's parents, the Kanes, provided $35,800 to apply toward the property's purchase price of $58,000. Kathleen Sullivan concurred with this testimony. As JSC correctly notes, even the most generous interpretation of this

---

[1] We also note that shortly after *Bazydlo* was decided the Illinois Supreme Court Committee on Pattern Jury Instructions defined the phrase "clear and convincing evidence," in the context of the insanity defense in a criminal prosecution, as "that degree of proof which, considering all the evidence in the case, produces the firm and abiding belief that it is highly probable that the proposition on which the defendant has the burden of proof is true." Illinois Pattern Jury Instructions, Criminal, No. 4.19 (3d ed. Supp. 1996); see also *In re Timothy H.*, 301 Ill. App. 3d 1008, 704 N.E.2d 943 (1998).

testimony shows that only a portion of the funds to purchase the property was acquired through the Kanes and the balance jointly by the Sullivans. The rule is: " '[W]here two persons together advance the price, and title is taken in the name of one of them, a trust results in favor of the other to such proportion of the property as is equal to the proportion of the consideration contributed by him.' [Citation.]" *Caudill v. Beil*, 127 Ill. App. 3d 847, 852, 469 N.E.2d 257, 261 (1984). Here, however, there is no evidence that Mr. Kane intended that his daughter act as a trustee of his resulting trust when he contributed the initial payment for the property. There was no documentary evidence to support an inference that such a trust was intended. The testimony is devoid of any express direction that a trust was intended. There was no evidence to show that the payment was anything more than a gift to his daughter, at the least, and a gift to his daughter and his son-in-law at the most. Although there was evidence that the Kanes stayed in the residence when they visited the Sullivans, there is nothing in the record which remotely suggests that the Kanes at any time overtly expressed any ownership in the property, which both Sullivans unequivocally testified was intended for Kathleen and the children.

Furthermore, although the testimony indicated that the Sullivans received money from the Kanes throughout their entire marriage, there was no evidence that the Kanes paid for utilities, improvements or the variety of other expenses that would demonstrate an ownership interest in the property. Even if such evidence had been introduced, it would still fall short of establishing the burden required to be met by one claiming a resulting trust exists. It was long ago explained, and is still the law today, that where, by or at the direction of a parent, a deed is executed to his child, the facts that the parent occupied the premises, paid taxes and made improvements, although some evidence of the absence of an intention to make a gift, are neither sufficient to overcome the presumption of a gift nor inconsistent with the theory of an advancement. *Moore v. Moore*, 9 Ill. 2d 556, 138 N.E.2d 562 (1956); *McCabe v. Hebner*, 410 Ill. 557, 102 N.E.2d 794 (1951); *Houdek v. Ehrenberger*, 397 Ill. 62, 72 N.E.2d 837 (1947); *Hartley v. Hartley*, 279 Ill. 593, 117 N.E. 69 (1917); *Dorman v. Dorman*, 187 Ill. 154, 58 N.E. 235 (1900); *Pool v. Phillips*, 167 Ill. 432, 47 N.E. 758 (1897); *In re Estate of McCormick*, 262 Ill. App. 3d 163, 168-69, 634 N.E.2d 341, 345 (1994).

It was undisputed that, at the time the Sullivans purchased the property, Kathleen Sullivan and John Sullivan were both named as joint tenants. Kathleen Sullivan admitted that there were no conditions made upon her as to the manner in which title would be held for

the property. The fact that John Sullivan would be made a co-owner of the property was of no consequence to the Kanes. This statement is consistent with the understanding that the funds were provided as a gift and the Kanes did not intend to have residual ownership rights to the property. Kathleen's testimony that it was she who wanted John's name on the deed does not rebut the presumption of her parents' gift to her. With respect to the gift presumption that arises when a parent purchases property and title is taken in the name of the child, Illinois case law is not as unequivocal with respect to the gift presumption in the case of a daughter-in-law or son-in-law. See, *e.g., McCormick*, 262 Ill. App. 3d at 170, 634 N.E.2d at 346 (refusing to find a resulting trust was created since a gift reasonably could be inferred *at least* with respect to the son, and further noting that there was no evidence tending to negate a gift to son's wife where the conveyance was in joint tenancy); but *cf. Varap v. Varap*, 76 Ill. App. 2d 402, 413, 222 N.E.2d 77 (1966) (no presumption of gift to daughter-in-law and evidence of gift was insufficient).

We think the better rule was stated in the Texas case of *Somer v. Bogart*, 749 S.W.2d 202 (Tex. Ct. App. 1988). There the court held that the gift presumption arises in a transfer of property between a father-in-law as payor and a son-in-law as payee. *Somer v. Bogart*, 749 S.W.2d at 204. The court explained that, in such a transfer, it could "perceive no reason why under normal circumstances a son-in-law should not be treated as the natural object of his father-in-law's bounty so as to take by gift." *Somer v. Bogart*, 749 S.W.2d at 204; accord *Amador v. Berrospe*, 961 S.W.2d 205, 207-08 (Tex. Ct. App. 1996).

Nonetheless, it was Kathleen Sullivan's theory at trial that the Kanes did not intend to give a gift to John Sullivan, and since the property was held in joint tenancy from 1972 until the time of the quitclaim deed, she introduced evidence to negate a gift to John from the Kanes. But, at best, the evidence shows a gift to John from his wife, rather than a gift from his in-laws. Again, none of the evidence shows that the Kanes intended to create a resulting trust. The evidence and testimony showed only that the Kanes made a gift to their daughter in 1972. Whether the Kanes originally or actually also intended a gift to John has no bearing upon the fact that the Kanes intended a gift for Kathleen, rather than a resulting trust for themselves. Kathleen, in receiving her gift, in turn made a gift to her husband. Whether John's gift came from his in-laws or from his wife is also irrelevant to the issue of whether the Kanes intended to create a resulting trust. John received the gift. John was named as a joint tenant *at the time of the gift.* Indeed, he remained a joint tenant for 27 years until he quitclaimed his interest to Kathleen prior to his filing

bankruptcy. This undisputed evidence, combined with the undisputed evidence that John accepted and retained the homestead exemption on the property, only strengthens the presumption that he had a beneficial interest in the property and indeed was an owner. Thus, John Sullivan clearly had an ownership interest, as well as his beneficial interest.

If a reasonable explanation of the evidence adduced may be made upon any theory other than the existence of a resulting trust, that evidence is insufficient to establish a resulting trust. *Fender v. Yagemann*, 29 Ill. 2d 205, 193 N.E.2d 794 (1963). The evidence here is capable of a reasonable explanation. From her testimony, Kathleen Sullivan expected, and in fact directed, John Sullivan to have an ownership interest in the property. The testimony imputed to the Kanes expresses only a desire that the money be used for the benefit of Kathleen Sullivan and her children, not the Kanes. That is exactly how the money was used. Using the monetary gift she received, Kathleen Sullivan purchased the subject property and intended that she and her husband be put on the title as joint tenants. There was no testimony or any other evidence that Kathleen Sullivan intended her gift to be used as a resulting trust for her benefit or anyone else's in the subject property. There was no evidence that she believed she was a trustee on behalf of her parents. The unrebutted presumption is that Kathleen Sullivan received a gift from her parents which was used for her benefit and was, in turn, a gift to her spouse, John Sullivan, which was also used for his benefit.

We reach our conclusion, not, as the dissent asserts by "improperly reweigh[ing] the evidence" (321 Ill. App. 3d at 160), but instead by properly concluding that the trial court's determination that John Sullivan did not have and never did have any ownership interest in the subject property was against the manifest weight of the evidence. Because Kathleen Sullivan failed to present clear and convincing evidence to rebut the gift presumption, the trial court erred in concluding that a resulting trust existed.

For the foregoing reasons, we reverse the decision of the trial court and remand for additional proceedings relating to any equitable lien that may exist on the part of Kathleen Sullivan.

Reversed and remanded with directions.

O'BRIEN, J., concurs.

JUSTICE BUCKLEY, dissenting:
In determining whether a resulting trust exists under these cir-

cumstances, courts must ascertain the payor's intent from the facts and circumstances shown by the record. *In re Estate of McCormick*, 262 Ill. App. 3d 163, 168 (1994). Such a factual determination is best left to the trial court and should not be disturbed unless it contradicts the manifest weight of the evidence. *McCormick*, 262 Ill. App. 3d at 168. The trial court's factual determinations are due great deference and contradict the manifest weight of the evidence only if an opposite conclusion is clearly evident. *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 538 (1997).

Sufficient evidence exists to support the trial court's finding and, therefore, an opposite conclusion is not clearly evident. First, the mere payment of the consideration raises a *prima facie* presumption of a resulting trust. *Hofferkamp v. Brehm*, 273 Ill. App. 3d 263, 272 (1995). JSC does not dispute that the Kanes provided the consideration for the purchase. Further, Kathleen testified that the Kanes continued to provide money for the monthly payments. Kathleen's testimony indicated that William Kane wanted to use this money to provide for his family ("his" meaning himself, his wife, his daughter and his grandchildren). Kathleen's testimony also indicated that the Kanes provided money for the property, in part, so that they would have a place to stay when they visited their daughter and grandchildren. JSC simply failed to present evidence sufficiently persuasive to reject the trial court's factual findings.

The majority improperly reweighs the evidence to reach a conclusion opposite to that reached by the trial court. We cannot reweigh the evidence or substitute our judgment for that of the trial court, even if we may have ruled differently. See *In re Marriage of Koberlein*, 281 Ill. App. 3d 880, 885 (1996); *Case v. Forloine*, 266 Ill. App. 3d 120, 125 (1993). The evidence in this case was almost entirely testimonial. The trial court sat in a superior position to listen to that testimony, observe the witnesses' demeanor, and judge their credibility. *People v. Gonzalez*, 184 Ill. 2d 402, 412 (1998). Because sufficient evidence exists in the record to support the trial court's factual findings, we should affirm.