705 A.2d 816

EUGENE M. MOONEY AND SHARYN A. MOONEY, PLAINTIFFS,
v. THE PROVIDENT SAVINGS BANK, WILLIAM DIOGUARDI
AND ESTHER DIOGUARDI, DEFENDANTS.

Superior Court of New Jersey
Chancery Division
Monmouth County

Decided August 11, 1997.

196 

*Kathleen R. Wall,* for plaintiffs

*Nicholas Stevens*, for the Provident Savings Bank (*Starr, Gern, Davison & Rubin*, attorneys).

*W. Peter Ragan*, for Dioguardis (*Blankenhorn and Ragan*, attorneys).

McGANN, J.S.C., retired and temporarily assigned on recall.

Plaintiffs, Mooney (husband and wife) bring this action to cancel of record four open mortgages which cloud the title to their residence located at 510 West End Avenue, Avon, New Jersey. Three of those mortgages are in the name of The Provident Savings Bank (hereinafter "Provident") and one in the names of the Dioguardis (husband and wife). The applicable statute, *N.J.S.A.* 2A:51-1 provides (as pertinent to the facts of this case) as follows:

2A:51–1. When authorized; proof required. Where a mortgage on real estate . . . is recorded in the office of the county clerk . . . of any county, the superior court in a summary or other action brought by any mortgagor or party in interest may direct the county clerk . . . to cancel the mortgage of record provided plaintiff shall:

a. . . .

b. . . .

c. Present such special circumstances as to satisfy the court that the mortgagee(s) . . . have no further interest in the mortgage or debt secured thereby.

Both Provident and the Dioguardis filed Answers with Counterclaims seeking a declaration that the liens of their mortgages (despite their having been previously foreclosed in an action brought by a superior lienholder) have been revived and continue as valid liens on the property.[1] Should that declaration be made, the Provident would institute an action to foreclose its liens in which the Dioguardis would be joined as junior lien holders.

Both defendants rely on the opinion in *Old Republic Insurance Co. v. Currie*, 284 *N.J.Super.* 571, 665 *A.*2d 1153 (Ch.Div.1995).

The essential facts, not in dispute, are those which follow.

---

[1] It is conceded that the debts secured by the mortgages have been discharged by the Mooneys bankruptcy proceeding.

Plaintiffs purchased a home located at 510 West End Avenue on May 27, 1983. On June 10, 1986 they borrowed $83,000 from Royal Mortgage Corporation and gave a first mortgage on that property to secure repayment of the debt. That mortgage was recorded on June 18, 1986, in Book 4062 of Mortgages page 315 etc. It was thereafter duly assigned to Horizon Financial Corporation, AB and then to Federal Home Loan Mortgage AB. On April 17, 1987, in order to secure a line of credit of $25,000, the Mooneys gave a note and second mortgage on the property to Corestates New Jersey National Bank. That mortgage was duly recorded on June 5, 1987 in Book 4289 of Mortgages page 215.

In late 1988 the Moneys contracted to purchase another residence property known as 130 Washington Avenue in Avon, owned by the Dioguardis for $310,000. To finance that purchase they paid $10,000 in cash; borrowed $250,000 from the Provident and gave a purchase money mortgage of $50,000 to the Dioguardis. Title closed on December 29, 1988. To secure the $250,000 loan, the bank allocated $150,000 to the 130 Washington Avenue property and $100,000 to the 510 West End Avenue property. It took back separate notes and mortgages on each. A first purchase money mortgage of $150,000 was given to the Provident on the 130 Washington Avenue property (recorded January 4, 1989 in Mortgage Book 4619, page 458) and a note for $50,000 given to the Dioguardis secured a second purchase money mortgage recorded January 6, 1989 in Mortgage Book 4621, page 264.

The other $100,000 note was secured by a third mortgage on 510 West End Avenue (recorded January 6, 1989 in Mortgage Book 4621, page 118). For some unexplained reason another mortgage securing the $100,000 debt was given at the closing also encumbering 510 West End Avenue. It, too, was recorded on January 6, 1989 in Mortgage Book 4621, page 292. It is technically a fourth mortgage on 510 West End Avenue but, the court presumes, was completely unnecessary. To further collateralize the $100,000 loan, two more mortgages (again, an unnecessary duplication) were placed on 130 Washington Avenue. Both were

recorded on January 6, 1989 and appear, respectively, in Mortgage Book 4621, page 176 and Mortgage Book 4621, page 290. Lastly, the Moneys gave a separate mortgage to the Dioguardis on 510 West End Avenue, to collateralize the note for $50,000. That mortgage, too, was recorded on January 6, 1989 in Mortgage Book 4621, page 298.[2]

After the purchase of 130 Washington Avenue, the Mooneys owned both properties but with little equity in either. The court takes judicial notice that in 1988, banks were lending money in that fashion. There was a generally held belief that real estate values would continue their upward spiral well into the future.

The properties were encumbered as follows:

### 510 West End Avenue

| | | |
|---|---|---|
| 1st Mortgage | Federal Home Loan Mortgage, AB | MB 4062–315 |
| 2nd Mortgage | Corestates N.J. National Bank | MB 4287–215 |
| 3rd Mortgage | Provident Bank ($150,000) | MB 4621–178 |
| 4th Mortgage | Provident Bank ($100,000) | MB 4621–292 |
| 5th Mortgage | Dioguardi ($50,000) | MB 4621–298 |

The $100,000 Provident loan was payable June 26, 1989. The bank agreed to renew the loan for a year provided interest of $5,000 was paid. The Mooneys did not have the money. Provident loaned them the $5,000 and took bank a note for that amount secured by a 6th mortgage on 510 West End Avenue recorded July 5, 1989 in MB 4698, page 848.

### 130 Washington Avenue

| | | |
|---|---|---|
| 1st Mortgage | Provident ($150,000) | MB 4619–458 |
| 2nd Mortgage | Provident ($100,000) | MB 4621–176 |
| 3rd Mortgage | Provident ($100,000) | MB 4621–290 |
| 4th Mortgage | Dioguardi ($50,000) | MB 4621–295 |

The Mooneys defaulted on the payments due to Provident and Dioguardi on the notes they held. The Mooneys also defaulted in payments due to Federal Home Loan Bank and Corestates Na-

---

[2] As between the Provident and the Dioguardis, it is clear that the latter understood that their $50,000 debt was subordinated to the $250,000 owed to the Provident.

tional Bank on their notes and mortgages on 510 West End Avenue. Federal Home Loan Bank filed a foreclosure action on its first mortgage joining all parties in interest.

All state action was then stayed on February 7, 1991 by the Mooneys' filing of a Chapter 7 petition in the United States Bankruptcy Court for the District of New Jersey.

The bankruptcy petition lists the debts secured by the mortgages as follows:

| | |
|---|---:|
| Federal Home Loan Bank (serviced by Midland Mortgage Company) | $ 69,609.00 |
| Corestates New Jersey National Bank | 24,713.00 |
| Provident ($150,000 note) | 147,828.00 |
| Provident ($100,000 note) | 106,431.00 |
| Provident ($5,000 note) | 5,321.00 |
| Dioguardi | 55,000.00 |

The trustee in bankruptcy abandoned any interest in 510 West End Avenue determining that the Mooneys had no equity in it. Appraisals at the time of the Provident loan had put its value at about $160,000. The bankruptcy court released the automatic stay as to 130 Washington Avenue.

The Mooneys received their "fresh start"[3] discharge in bankruptcy on January 13, 1993 and thus were relieved of all personal liability of the debts secured by all mortgages.

Provident filed its foreclosure complaint against 130 Washington Avenue on March 16, 1992; obtained a final judgment in foreclosure on September 2, 1992. That judgment fixed the total amount owned to Provident at $294,390.09. At the Sheriff's sale which followed, Provident bought the property with a bid of $220,000 on July 13, 1993. By virtue of that final judgment, any lien held by Provident on 130 Washington Avenue merged into the deed delivered to it by the Sheriff; the lien of the Dioguardi mortgage was

---

[3] 11 *U.S.C.A.* § 727; *Burlingham v. Crouse*, 228 *U.S.* 459, 33 *S.Ct.* 564, 57 *L.Ed.* 920 (1913); *Williams v. United States Fidelity & Guaranty Co.*, 236 *U.S.* 549, 35 *S.Ct.* 289, 59 *L.Ed.* 713 (1915); *Wright v. Union Cent. Life Ins. Co.*, 304 *U.S.* 502, 58 *S.Ct.* 1025, 82 *L.Ed.* 1490 (1938).

wiped out. *Atlantic City National Bank v. Wilson,* 108 *N.J.* Eq.
213, 154 *A.* 537 (E & A 1931). That property has since been sold
by Provident to persons having no connection to this case. Be-
cause no deficiency judgment could be obtained against the Moo-
neys, no fair market value hearing was ever held as to 130
Washington Avenue. Provident takes the position that it is still
owed $74,390.09 ($294,390.09—$220,000) plus interest.

With regard to 510 West End Avenue, foreclosure actions were
filed by Federal Home Loan Bank and Corestates. Federal
Home Loan Bank did not press its action; Corestates did. In
addition to the Mooneys (who defaulted), Provident and the Diog-
uardis (as junior lien holders) were joined. Provident filed a non-
contesting answer; the Dioguardis defaulted. Provident also filed
a non-contesting answer to Federal Home Loan Bank's complaint.

Corestates proceeded to enter a final judgment in foreclosure.
Its debt was fixed at $31,315.87. At the duly advertised and
noticed Sheriff's sale on June 28, 1993, the Mooneys bid on the
property for $31,000. Although aware of the sale, Provident chose
not to attend or bid.

The Sheriff's deed to the Mooneys gave them clear title subject
only to the Federal Home Loan Bank's first mortgage. The
junior liens of Provident and of the Dioguardis as to 510 West End
Avenue were wiped out.

On July 13, 1993, the Mooneys paid some $44,158.10 to Federal
Home Loan Bank for which it agreed to reinstate the mortgage
and dismissed its foreclosure action.

On August 21, 1993—after its successful foreclosure on 130
Washington Avenue and its purchase of that property for $220,000
and after entry of final judgment in foreclosure in favor of
Corestates as to 510 West End Avenue on June 1, 1992 and the
sheriff's sale on June 28, 1993—Provident filed an action to
foreclose its three mortgages on 510 West End Avenue. In
addition to naming the Mooneys as defendants it also joined the
Dioguardis as holders of a junior lien. They filed an appearance

on October 7, 1993. The Mooneys moved to dismiss the Complaint on two grounds:

1) the entire controversy doctrine, in that Provident had submitted to the court's jurisdiction by filing a non-contesting answer in the Corestates action and failing to bid at the sale, and,

2) res adjudicata, in that its lien on the property had been lost upon entry of the Corestates final judgment.

■ Provident opposed the motion. It argued that the successful bid by the Mooneys at the Corestates sale constituted a "redemption" by them of the mortgage; that once "redemption" took place it voided the entire Corestates foreclosure action and therefore left in place as liens the three Provident and the Dioguardi mortgages. Cited in support of that proposition was *Lobsenz v. Micucci Holdings, Inc.,* 127 *N.J.Super.* 50, 54, 316 *A.*2d 59 (App.Div.1974). For reasons placed on the record, then, that argument was rejected. On its facts *Lobsenz* was clearly distinguishable. Here, there was no allegation of collusive activity (as there was in *Lobsenz* ) by the Mooneys and Corestates to cut off the Provident and Dioguardi mortgages. Rather, the Mooneys were doing all they could to hold on to their home. There is no law or equitable principle barring the property owner from bidding at the sheriff's sale. *Cunningham & Tischler, Law of Mortgages* (1975) § 356, Vol. 30 *New Jersey Practice* series, at 293 (citing *C.J.S. Mortgages* § 200a).

The simple fact is that Provident did not protect its interests by bidding at the Corestates sale. Had it done so, it might well have outbid the Mooneys and taken title to the property subject to the Federal Home Loan mortgage on which there was due, as alleged in its complaint in foreclosure, some $93,270.88 as of February 25, 1993. Sound business judgment, perhaps, dictated that it made no sense for Provident to bid in excess of $31,000 because the property was not worth it. In any event, Provident passed on the opportunity to do so and its lien was extinguished.

After argument on the motion the Provident complaint was dismissed with prejudice on December 8, 1993. No appeal was taken from that summary judgment.

Recently the Mooneys attempted to refinance the property to pay off the balance on the Federal Home Loan Bank loan and to make certain improvements to the property. A title search revealed that the three Provident mortgages and that of the Dioguardis were still open of record. The present complaint to cancel those liens was then filed.

## CONCLUSIONS OF LAW

The remedy of reviving the lien of a previously extinguished mortgage is purely equitable in nature. Its purpose is to undo what otherwise would be an unjust and unconscionable result. Case law has developed two broad bases upon which the remedy may be granted. The first is based on fraudulent conduct on the part of the property owner; the second is broadly based on breach of a formal covenant undertaken by the property owner. In either case what triggers the application for "revival" of the lien, is the reacquisition of title by the property owner after its apparent loss (as well as extinguishment of the lien sought to be revived by a final judgment in foreclosure of a superior mortgage and sheriff's sale of the property.)

An example of the collusive conduct is that presented in *Stiger v. Mahone*, 24 *N.J. Eq.* 426 (Ch. 1874). There the court found that the owner of the property conspired with the first mortgagee to have him foreclose on his mortgage with the purpose of extinguishing the second mortgage. At the sheriff's sale the owner bid an amount sufficient to satisfy the first mortgage but left only a "pittance" for the second mortgage on his debt. In addition the court found that the second mortgagee did not appear at the sheriff's sale to bid, because he did not expect it to take place—since he was negotiating with the owner regarding payment to him on his second mortgage. His conscience having been shocked by the skullduggery, the Vice–Chancellor decreed that

the second mortgage continued (now in first position) as a lien on the property to secure the debt still owed and to be foreclosed in the usual manner.

As pointed out in *Old Republic Ins. Co. v. Currie, supra,* 284 *N.J.Super.* at 575, 665 *A.*2d 1153 (and touched upon in *Stiger v. Mahone, supra,* at 429) there is also a breach of covenant basis upon which a mortgage may be revived. There are three variations on that theme:

1. Where the owner of the equity of redemption buys the property at the sheriff's sale and effectively pays off the first mortgage being foreclosed, he is doing nothing more than he was obliged to do under that note (or bond) and mortgage. Had he made the same payment before the entry of final judgment, the foreclosure action would have been dismissed; he would have retained title but still subject to the second (now first) mortgage which secured an outstanding debt for which the owner was still liable. Since "Equity Regards That as Done Which Ought to be Done", the lien can then be revived.[4]

2. Where there is a covenant in the second mortgage by which the owner undertakes to make all required payments on the first mortgage (to protect the lien of the second mortgagee) and he fails to do so, after foreclosure of the first mortgage and apparent extinguishment of the second, a revival of the second takes place if the original owner comes back into title. The debt owed the second mortgagee has not been paid and the lien in good conscience should be restored as security. That argument is present as well where the owner and first mortgagee conspire, as in *Stiger v. Mahone.*

3. A variation of the covenant approach is presented where the owner takes title subject to two mortgages and affirmatively assumes the obligation of paying both debts. That undertaking will permit equity, in proper circumstances, where the foreclosure

---

[4] *Martindell v. Fiduciary Counsel,* 133 *N.J. Eq.* 408, 413, 30 *A.*2d 281 (E & A 1942); *Goodell v. Monroe,* 87 *N.J. Eq.* 328, 335, 100 *A.* 238 (E & A 1916).

of the first mortgage apparently extinguishes the lien of the second, to decree that the junior mortgage continues as security for the unpaid debt to the second mortgagee, when the original owner retakes his title.

See also 55 *Am Jur* 2d, Mortgages § 813 and 814 (1996); 59 *C.J.S. Mortgages,* § 200(a) (1949) and *Annotation,* 111 *A.L.R.* 1285 (1937).

Underlying entitlement to the equitable remedy, is therefore, the equitable maxim, "Equity will not suffer a wrong without a remedy." *Crane v. Bielski,* 15 *N.J.* 342, 349, 104 *A.*2d 651 (1954). However, the reverse of the maxim is also true, i.e. Where there is no wrong, there is no basis for equitable relief.

Here the Mooneys, in obvious financial straits, exercised their legal right to seek the protection and relief of a bankruptcy court. As a result, the debts secured by all mortgages were discharged. They lost the larger home at 130 Washington Avenue in the Provident foreclosure. Provident recovered a substantial portion of its loss on the bad debt by obtaining title at the foreclosure sale and selling that property free and clear of all liens. In order to save the home at 510 West End Avenue, they raised sufficient funds from family members to make the successful bid at the Corestates foreclosure sale. There was no fraud, collusion or chicanery involved in that. Both Provident and the Dioguardis were given proper notice of the sale. They chose not to appear and bid. Their liens were extinguished by the Corestates final judgment and sale. There is no covenant or undertaking to pay the superior mortgages made by the Mooneys in any of the junior mortgages given to them. Indeed, those mortgages were only collateral security for the $250,000 loan of Provident and the $50,000 second purchase money mortgage taken to secure payment of the debts created by the purchase of 130 Washington Avenue.

In purchasing title at the Corestates sale the Mooneys took subject to the first lien of Federal Home Loan Bank. They, then

were able to have that federally created lender agree to withdraw its foreclosure complaint and reinstate the loan upon receipt of a lump sum payment satisfactory to it. That is not reprehensible.

There is absence of any proof of fraud or collusive activity. Neither defendant here suggests that there was. All reasonable inferences point to the contrary.

## CONCLUSION

■ Is the "covenant" approach implicated under the facts of this case? After all, in successfully bidding at the sale under the foreclosure of the second mortgage (which extinguished the Provident and Dioguardi liens) were not the Mooneys simply paying that which they were obligated to do? The short answer is that they were not. The *debts* to Corestates, Provident and Dioguardi had been previously wiped out by their bankruptcy discharge. All that was left were the liens. In the *Stiger* case and in out-of-state cases which are cited in the authorities noted above, the debts were still valid and subsisting. The revival of the junior liens by equitable decree simply restored the security for those debts. In the view of this court, the discharge of the liability for the debts by the Bankruptcy Court is an essential difference. A rationale based on contractual undertakings is misplaced, unless there is an enforceable money claim. The same would be true if the debt secured by a mortgage no longer had viability because of the running of a statute of limitations.

To that extent, I disagree with the result reached in *Old Republic Ins. Co. v. Currie, supra.*

For those reasons, there is no entitlement to a declaration reviving the levies of the Provident and Dioguardis mortgages. Plaintiffs' motion is granted. An order will be entered directing the County Clerk to discharge the mortgages.