No. 3--97--0784

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT 

_________________________________________________________________

BCGS, L.L.C., Assignee of ) Appeal from the Circuit Court

Residential Financial ) of Du Page County.

Corporation, )

) 

Plaintiff, ) 

) No. 96--CH--507

)

)

LEONARD J. JASTER, ) 

)

Defendant and Counter- )

plaintiff-Appellee )

)

 )

(Sharon E. Jaster, a/k/a Sharon )

E. Aycock; Stephen M. Deitsch; )

Nonrecorded Claimants; Unknown )

Tenants; and Unknown Owners, ) 

Defendants;  Elizabeth L. ) Honorable

Krueger, P.C., Defendant and ) Bonnie M. Wheaton,

Counterdefendant-Appellant). ) Judge, Presiding.

_________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, BCGS, foreclosed on the mortgage it held on the residential property of the mortgagor, defendant Leonard Jaster.  BCGS is not a party to this appeal.  At the time of foreclosure, defendant Elizabeth L. Krueger, P.C. (Krueger) held a junior lien on the property.  Jaster allowed the redemption period to lapse and subsequently offered the successful bid to purchase the property at the judicial foreclosure sale.  The trial court confirmed the sale, extinguished Krueger’s lien, and awarded the surplus funds to Jaster.  Krueger timely appeals.  We affirm in part,  reverse in part, and remand.

The following summary of facts is taken from the record on appeal.  On June 6, 1996, BCGS filed a complaint to foreclose its mortgage executed by Jaster and his former spouse.  The complaint named Jaster and Krueger, among others, as defendants; the remaining defendants are not parties to this appeal.  On July 8, 1996, Krueger filed its answer, admitting that it held an interest in and an equitable right to redeem the subject property.  In its answer, Krueger also requested that the trial court take an accounting of amounts due and owing to it.  Krueger's interest consisted of a $33,637.70 junior lien attachment against the property, which resulted from Krueger's representation of Jaster's former spouse in a dissolution proceeding.  After the dissolution, Jaster's former spouse filed for bankruptcy and eventually quit-

claimed her interest in the property to Jaster.

On July 26, 1996, BCGS filed a motion for summary judgment, acknowledging Krueger's judgment lien.  On August 7, 1996, Jaster filed his appearance and counterclaim.  In his counterclaim, Jaster acknowledged Krueger's judgment lien on the property and requested that the trial court declare the lien on his property void and find that the lien attached only to his former spouse's property.  On August 9, 1996, Jaster filed his answer to BCGS’s complaint, admitting that he was in default of his mortgage obligation.  

On September 4, 1996, the trial court entered its judgment of foreclosure and order of sale.  The order provided that if the property was not redeemed by January 11, 1997, the expiration date for the statutory period of redemption, a judicial sale would be held.  The order also provided that, the proceeds of the sale would be applied to the costs of the sale first and to BCGS second.  Any surplus was to be brought into court for a determination of its disposition.  Finally, the order stated that, if the property was not redeemed and the property was sold at a judicial sale,  defendants would lose all rights in the property.  Also, on September 4, the trial court granted BCGS’s motion for summary judgment against Krueger and Jaster.

On November 4, 1996, Krueger filed a motion to strike and dismiss Jaster's counterclaim, asserting that Jaster took possession of the property subject to all existing liens.  Krueger also alleged that Jaster's counterclaim failed to state a cause of action.  On December 18, 1996, BCGS filed a notice of judicial sale of real estate mortgage foreclosure which set the judicial sale for January 14, 1997.  At the sale, Jaster bid $100,000 on the property and was the highest bidder.  On January 21, 1997, pursuant to Jaster's motion, the trial court ordered that Jaster's motion to adjudicate Krueger’s lien be withdrawn.  

On January 23, 1997, Krueger filed motions to set aside the judicial sale and to waive bond.  In the motion to set aside the judicial sale, Krueger alleged that it received no actual notice and that justice was not served.  On February 24, 1997, Jaster filed a motion to set aside Krueger's lien.  Jaster alleged that he discovered Krueger's lien only after he received his former spouse's quitclaim deed for the property.  Jaster argued that, because he is now the sole owner of the property, Krueger's lien should not encumber his interest in the property.  

On February 25, 1997, Krueger filed its amended motion to set aside the sale or in the alternative to affirm its lien on the property.  After a series of responsive pleadings, the trial court confirmed the judicial sale in an order dated April 30, 1997.  On June 3, 1997, the trial court denied Krueger's motion to affirm its lien.  Both Jaster and Krueger filed motions to receive the sale surplus.  On July 11, 1997, the trial court awarded the $6,534.54 surplus to Krueger.  Jaster then filed a motion to reconsider on July 23, 1997, maintaining that Krueger's junior lien was extinguished by the judicial foreclosure sale and that he should be entitled to the surplus.

In a memorandum opinion and order filed September 25, 1997, the trial court found that Jaster and his former spouse were owners of the property that was subsequently foreclosed and that Jaster, the mortgagor, was also the successful bidder at the foreclosure sale.  The trial court determined that, pursuant to 
Kling v. Ghilarducci
, 3 Ill. 2d 454 (1954), Jaster took title to the property free and clear of Krueger's lien.  The trial court also found that Krueger's actions of filing an appearance and answer to the complaint were insufficient to protect its lien on the property.  Finally, the trial court ordered the surplus proceeds from the property to be turned over to Jaster.  Krueger timely appeals.

Krueger raises five principal contentions on appeal:  (1) the trial court abused its discretion in confirming the judicial sale; (2)  the trial court erred in determining that Krueger had proper notice of the judicial sale; (3) the trial court erred in confirming the sale prior to determining the priorities of the junior lienholders and ruling on Krueger’s motion to affirm its lien; (4) the trial court erroneously failed to apply 
Hack v. Snow
, 338 Ill. 28 (1929); and (5) the trial court improperly awarded the surplus proceeds to Jaster.  

I

Krueger’s first contention on appeal is that the trial court abused its discretion in confirming the judicial foreclosure sale.  Krueger argues that, although the statutory redemption period had expired, Jaster’s purchase constituted a redemption because he was the original mortgagor.  Krueger relies on 
Citicorp Savings v. First Chicago Trust Co.
, 269 Ill. App. 3d 293 (1995), as support for the proposition that the mortgagor may redeem the property after the period of redemption.  According to Krueger, Jaster was not a 
bona fide
 purchaser but an interested party with knowledge of all defects in title.  Krueger asserts that Jaster, in an attempt to clear title to the property, allowed the property to go into foreclosure only so he could retake title free and clear of Krueger’s lien.  As a result of the trial court’s confirmation of sale, Krueger was prejudiced.  

Jaster replies that the trial court properly confirmed the sale.  He argues that a redemption can only take place during the redemption period and, in this case, the redemption period had expired.  He maintains that because the redemption period expired and his rights in the property were extinguished, he was a stranger to the proceedings and therefore a 
bona fide
 purchaser at the foreclosure sale. 

In Illinois, a judicial foreclosure sale is not complete until it has been approved by the trial court.  
Commercial Credit Loans, Inc. v. Espinoza
, 293 Ill. App. 3d 923, 927 (1997).  Pursuant to section 15--1508(b) of the Illinois Mortgage Foreclosure Law (Mortgage Foreclosure Law), the trial court shall conduct a hearing to confirm the sheriff's sale of foreclosed property and shall enter an order confirming the sale unless it finds that “(i) a notice required in accordance with subsection (c) of Section 15--

1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently or (iv) that justice was otherwise not done ***.”  735 ILCS 5/15–1508(b) (West 1996).  The disapproval of a sale is warranted upon a showing of unfairness that prejudices an interested party.  
Espinoza
, 293 Ill. App. 3d at 927, citing 
Citicorp Savings v. First Chicago Trust Co.
, 269 Ill. App. 3d 293, 300 (1995).  A trial court exercises broad discretion in approving or disapproving a judicially mandated sale.  
Fleet Mortgage Corp. v. Deale
, 287 Ill. App. 3d 385, 388 (1997). 

In this case, the trial court did not abuse its discretion in confirming the judicial sale.  Neither section 15--1508(b) nor any other statute or judicial decision requires that the purchaser at a judicial sale shall not have notice of the outstanding rights of others in order to take title free and clear of those rights.  Section 15--1509(c) of the Mortgage Foreclosure Law (735 ILCS 5/15–1509(c) (West 1996)) expressly provides that all outstanding claims on property that has been the subject of a foreclosure and sale pursuant to the law are extinguished.   The purchaser of such property, therefore, takes the property free of such claims, regardless of his knowledge of the claims.  

The fact that Jaster had knowledge of Krueger’s lien does not distinguish him from other potential purchasers of the property.  Krueger’s lien was recorded.  Therefore, all purchasers would be deemed to have constructive notice of its lien.  See 
Pacemaker Food Stores, Inc. v. Seventh Mont Corp.
, 117 Ill. App. 3d 636, 645-46 (1983) (purchasers are charged with notice of whatever appears of record).

In addition, contrary to Krueger’s assertion, Jaster’s purchase of the property is not considered a redemption merely because he occupies the status of a mortgagor.  Krueger’s argument contravenes the express language of the Mortgage Foreclosure Law which provides that, “[o]nce expired, the right of redemption *** shall not be revived” (735 ILCS 5/15--1603(c)(1) (West 1996)).  Here, Jaster’s purchase of the property occurred after the expiration of the redemption period and, therefore, cannot be considered a redemption.

Furthermore, even though Jaster was the mortgagor, he was not precluded from purchasing the property at the judicial sale and taking title to that property free and clear of Krueger’s interest.  When a mortgagor has given a warranty of title in a junior mortgage, courts will not permit the mortgagor to extinguish the junior lien by purchasing the property at a judicial sale held on the foreclosure of a first mortgage.  See 
Dorff v. Bornstein
, 277 N.Y. 236, 242, 14 N.E.2d 51, 54 (1938).  When there is no such warranty, however, and no evidence of fraud, a mortgagor may take title free and clear of any junior liens by making the successful bid at the judicial sale held on a foreclosure of a senior lien.  See 
Mooney v. Provident Savings Bank
, 308 N.J. Super. 195, 202, 705 A.2d 816, 820 (Ch. Div. 1997).   

In this case, there was no warranty of title that prevented Jaster from extinguishing Krueger’s lien because this lien was not based on a junior mortgage.  Also, contrary to both Krueger’s assertion and the dissent’s conclusion, there is no evidence of fraud or collusive activity by Jaster.  Faced with BCGS’s  decision to foreclose its mortgage, Jaster acted in accordance with the Mortgage Foreclosure Law to avoid losing his home.  The Mortgage Foreclosure Law did not require him to redeem his property and, following the expiration of that redemption period, did not prohibit him from purchasing the property at the foreclosure sale.  There is also no indication that the price Jaster bid for the property was unreasonable.  In addition, section 15--1509(c) of the Mortgage Foreclosure Law, which extinguishes all outstanding claims on property that has been the subject of a foreclosure and sale, does not exempt from its application property that has been purchased by a mortgagor.  See 735 ILCS 5/15–1509(c) (West 1996).

   Although Jaster admitted that his goal during the foreclosure proceedings was to remove the liens from his property, this statement is not evidence of fraud, especially given that, under section 15--1509(c) of the Mortgage Foreclosure Law, this is the effect of foreclosure of a senior lien and sale of the property.   See 735 ILCS 5/15--1509(c) (West 1996).  Jaster’s actions, therefore, were proper under the Mortgage Foreclosure Law.

Krueger’s argument that the sale was prejudicial to Krueger is undermined by the fact that Krueger was made a party to the foreclosure proceedings and the trial court’s finding that Krueger had notice of the judicial sale of the property.  Krueger, therefore, had the opportunity to protect its interest in the property pursuant to its lien. 

Krueger’s reliance on 
Citicorp Savings v. First Chicago Trust Co.
, 269 Ill. App. 3d 293 (1995), is unpersuasive.  In 
Citicorp
, the mortgagors defaulted on their mortgage with Citicorp, the mortgagee.  Thereafter, the statutory right to reinstate their mortgage expired.  A sale was set for March 10, 1993.  Despite the expiration of the statutory reinstatement period, Citicorp indicated to the mortgagors that it would accept either a payoff or a reinstatement through March 15, 1993.  The mortgagors’ right to redeem the property also expired.  Citicorp subsequently represented to the mortgagors’ attorney that the sale date would be changed from March 10 to March 16.  On March 12, 1993, three days prior to the expiration date in Citicorp’s letter, the mortgagors contacted Citicorp to reinstate their mortgage.  Citicorp, however, informed the mortgagors that a judicial sale had already been held and the property had been sold.  The trial court vacated the sale, noting that it was held by mistake.  
Citicorp
, 269 Ill. App. 3d at 296. 

On appeal, the reviewing court determined that it would have been against the interests of justice for the trial court to have confirmed the sale given that Citicorp had represented to the mortgagors that the sale would be postponed and that the sale took place by mistake.  
Citicorp
, 269 Ill. App. 3d at 300-01.  The court’s holding was based on the fact that the mortgagee had led the mortgagors to believe that the redemption period had been extended.  Unlike 
Citicorp
, in the present case, there is no evidence that would warrant an extension of the redemption period beyond that provided in the Mortgage Foreclosure Law.  
For these reasons, we affirm the trial court’s order confirming the sale of the property to Jaster.

II

Krueger’s next contention on appeal is that the trial court erred in confirming the sale because Krueger did not receive notice of the sale.  Krueger argues that the trial court failed to consider the affidavits of its employees, in which they averred that they had not received notice of the sale.  Krueger also points to two notices of judicial sale contained in the court file as evidence that the additional notice was filed with the clerk of the circuit court instead of being sent to Krueger.   

Jaster replies that Krueger received sufficient notice of the sale.  In support of his argument, Jaster relies on the affidavit of mailing from BCGS’s attorney, in which he averred that notice was sent to all parties on December 16, 1996.  Jaster also maintains that notice of the sale was published for three consecutive weeks in the Carol Stream Press.  In addition, Jaster asserts that Krueger had actual notice of the sale.  He argues that Krueger’s attorney testified that Krueger did know of the sale because a paralegal from the office had called to inquire about the sale.  Moreover, the day before the sale, Krueger’s attorney made an offer to purchase the property. 

Section 15--1507(c) of the Mortgage Foreclosure Law (735 ILCS 5/15–1507(c) (West 1996)) sets forth the notice requirements governing a judicial sale.    This provision requires that, 
inter alia
, the responsible party provide notice to “all parties in the action who have appeared and have not theretofore been found by the court to be in default for failure to plead.”  735 ILCS 5/15--

1507(c)(3) (West 1996).  A party entitled to notice of sale who did not receive such notice may request that the sale be set aside by filing a motion with supporting affidavits prior to the confirmation of the sale.  735 ILCS 5/15--1508(c) (West 1996).  

The question of whether Krueger received notice of the sale involves a dispute of fact.  A trial court’s findings of fact are entitled to great deference and should not be overturned on review merely because the reviewing court may have reached a different result.  
Lake County Grading Co. v. Advance Mechanical Contractors, Inc.
, 275 Ill. App. 3d 452, 463-64 (1995).  A trial court’s findings of fact will only be set aside when they are against the manifest weight of the evidence.  
In re Application of the County Treasurer
, 131 Ill. 2d 541, 549 (1989). A finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident.  
Case v. Forloine
, 266 Ill. App. 3d 120, 125 (1993).  

The trial court’s finding that Krueger had notice was not against the manifest weight of the evidence.  The record contains two notices of judicial sale filed December 18, 1996, and December 30, 1996, respectively, and a notice of filing filed December 30, 1996.  An affidavit of mailing dated December 16, 1996, is attached to the notice of filing.  The affidavit contains a service list that includes Krueger’s name.  In confirming the sale, the trial court determined that the notice of filing constituted 
prima facie
 evidence.  Neither the affidavits of Krueger’s employees nor the duplicate notice of sale in the trial court record is conclusive of whether Krueger received notice of the sale.  In light of this evidence and our deference to the trial court’s findings, we conclude that the trial court did not err in determining that Krueger received notice of the sale.

Our conclusion that the trial court did not err in refusing to set aside the sale due to defective notice is also supported by evidence in the record that on January 13, 1997, the day before the sale, Krueger’s attorney contacted BCGS by faxing a letter that included an offer to purchase the property.  Not only did the letter contain an offer, but it also included a statement that indicated that Krueger was aware of the sale date.  Moreover, at the hearing on Krueger’s motion to set aside the sale, Krueger’s attorney stated that a paralegal from Krueger’s office called to inquire about the sale but did not ask where it would be held.

III

Krueger also challenges the trial court’s failure to establish the priorities of the junior lienholders prior to the confirmation of the judicial sale.  Krueger urges that we follow 
NBD Highland Park Bank, N.A. v. Wien
, 251 Ill. App. 3d 512, 519 (1993), in which the reviewing court determined that the trial court committed reversible error when it failed to set the priorities of the junior lienholders prior to the confirmation of the judicial sale.

In response, Jaster argues that the Mortgage Foreclosure Law does not require a trial court to set the priorities of junior lienholders prior to the confirmation of sale.  Furthermore, Jaster maintains that because Krueger was the only junior lienholder, unlike the multiple junior lienholders in 
Wien
, the trial court was not required to prioritize.  

Krueger’s reliance on 
Wien
 is misplaced.  Although the trial court in 
Wien
 deferred its determination of the priority of the valid interests, as Jaster correctly notes, that case concerned multiple lienholders.  The trial court was therefore required to establish the priority of any valid interest.  Unlike 
Wien
, in this case, Krueger was the only junior lienholder claiming an interest in the property.  In the absence of other claims, there was no need for the trial court to determine the issue of priority.  Accordingly, we find Krueger’s contention meritless.  

Krueger appears to be raising an additional challenge to the trial court’s decision to rule upon the confirmation of the sale before Krueger’s motion to affirm the lien.  The record indicates that at the April 30, 1997, hearing, the trial court was faced with deciding two issues: the confirmation of the sale and the motion to affirm Krueger’s lien.  It ruled on the confirmation of sale issue first because it found that this issue was dispositive.  The trial court stated that if it decided to set aside the sale, the issue of the affirmance of Krueger’s lien would be rendered moot because a new sale would be held which would provide Krueger with an opportunity to bid on the property.  In a similar fashion, Krueger made a strategical decision to first request a ruling on its motion to affirm its lien because, if the trial court ruled in its favor, Krueger would not subsequently challenge the confirmation of sale.  The Mortgage Foreclosure Law contains no requirement mandating the order of resolution of a confirmation of sale and a motion to affirm a lien.  In the absence of such authority, we find no error with the order that the trial court employed when it ruled on these issues.  

IV

Krueger’s next contention on appeal is that the trial court erred in failing to apply 
Hack v. Snow
, 338 Ill. 28 (1929).  In 
Hack
, the court held that liens are not extinguished when a mortgagor redeems property before the expiration of the right of redemption.  
Hack
, 338 Ill. at 32.  Unlike  
Hack
, in this case, the right of redemption had expired.  Thus, as Jaster correctly notes, because his purchase cannot be considered a redemption, we find that the trial court did not err in finding 
Hack
 inapplicable.  
   

V

Krueger’s final contention on appeal is that the trial court erred in awarding the surplus proceeds to Jasper.  Krueger argues that it attempted to protect its interests in the lien by filing an answer to the mortgage foreclosure petition and a motion to set aside the sale, and by petitioning the court to establish priority of the lien before the confirmation of the sale.
  Jaster replies that the trial court properly awarded him the surplus.  He maintains that Krueger’s lien was extinguished because it did not protect its lien and, therefore, Krueger was not entitled to the surplus.  

In its order, the trial court stated that, because Krueger’s lien had been extinguished by the judgment of foreclosure and the expiration of the period of redemption, Krueger had no valid claim to the surplus.  The trial court deferred its decision as to the distribution of the surplus proceeds until after the confirmation of the sale.  A foreclosure is an equitable proceeding (see 
Kankakee Federal Savings & Loan Ass'n v. Mueller
, 134 Ill. App. 3d 943, 946 (1985)), and we believe it was unfair for the court to wait until after the confirmation of the sale to determine the distribution of the surplus and then deny Krueger any interest in the surplus based on the fact that the confirmation of the sale had extinguished its lien.  See 
Kankakee
, 134 Ill. App. 3d at 946 (holding that a defaulted junior lienholder was entitled to surplus proceeds from the foreclosure sale because the mortgagor admitted the existence of the lien, the trial court deferred distribution of the surplus until after the sale, and the junior lienholder presented proof of the amount of its lien at the proceedings on the distribution of the surplus).

Although, after a hearing, the trial court may have determined that Krueger’s lien, as Jaster claimed, was not valid to begin with, the trial court conducted no such inquiry.  Because it was improper to deny Krueger the opportunity to demonstrate its right to the surplus, we reverse the trial court’s order awarding Jaster the surplus proceeds and remand the cause for further proceedings to determine whether Krueger was entitled to the surplus based on the lien it possessed at the time of the foreclosure.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed in part and  reversed in part, and the cause is remanded for further proceedings consistent with this opinion.  

Affirmed in part and reversed in part; cause remanded.

INGLIS, J., concurs.

JUSTICE HUTCHINSON, dissenting:

The majority concludes that the trial court was correct in confirming a judicial foreclosure sale to Jaster, the owner of redemption who admittedly accepted a deed to his property encumbered with a $33,000 lien, later determined that he would prefer not to have such a lien encumbering his property, voluntarily allowed his property to lapse into foreclosure proceedings for the admitted purpose of removing the lien, waited for the statutory period of redemption to expire, then bid a price exceeding the redemption amount at the sale, resulting in the removal of Krueger's lien.  The majority finds no evidence of fraud or collusive activity by Jaster.  For the following reasons, I respectfully dissent.

Pursuant to section 15--1508(b) of the Illinois Mortgage Foreclosure Law (Mortgage Foreclosure Law) (735 ILCS 5/15–1508(b)(West 1996)), the trial court shall conduct a hearing to confirm the sheriff's sale of a foreclosed property and shall enter an order confirming the sale unless it finds, 
inter alia
, “that justice was otherwise not done.”  735 ILCS 5/15–1508(b)(iv) (West 1996).  After reviewing the record, statutory authority, and appropriate case law, I believe that justice was not otherwise done and that the trial court abused its discretion in confirming the sale.

The majority determines that, once Jaster's statutory period of redemption expired, he stepped into the shoes of a common purchaser.  Although the Mortgage Foreclosure Law does not expressly prohibit owners from repurchasing their property at a judicial foreclosure sale, it does not expressly allow it either.  Hence, we have an issue of first impression.  I do, however, believe that, when read in their entirety, the redemption and foreclosure statutes imply that owners of redemption may not transform themselves into purchasers by virtue of an expiration date. 

By definition, Jaster is clearly an “owner of redemption.”  See 735 ILCS 5/15–1212 (West 1996)(defining “owner of redemption” as a “mortgagor, or other owner or co-owner of the mortgaged real estate”).  By statute, a “purchaser” at a judicial foreclosure sale receives a receipt and a certificate of sale.  735 ILCS 5/15–1507(e), (f) (West 1996).  All claims are thereafter barred once title is passed and vested to the purchaser.  735 ILCS 5/15–1509(b), (c) (West 1996).  However, the Mortgage Foreclosure Law fails to define “purchaser.”  The Uniform Commercial Code (810 ILCS 5/1–101 
et seq.
 (West 1996)) generally defines “purchaser” as “a person who takes by purchase.”  810 ILCS 5/1--201(33) (West 1996).  Jaster certainly falls within this general definition.  Our supreme court has had occasion to offer a more precise and applicable definition:  “[A] person who takes title to real property in good faith for value without notice of outstanding rights or interests of others.  A 
bona fide
 purchaser takes such title free of any interests of third persons, except such interests of which [she or] he has notice.”  
Daniels v. Anderson
, 162 Ill. 2d 47, 57 (1994).

In 
Kling v. Ghilarducci
, 3 Ill. 2d 454 (1954), our supreme court specifically excluded “owners” when discussing the rights of 
bona fide
 purchasers.  The 
Kling
 court stated:

“A 
bona-fide
 purchaser, 
other than the owner
, on an unconditional sale of real property pursuant to a regular foreclosure acquires a clear and absolute title as against all parties to the suit and their privies which relates back to the mortgage so as to cut off all intervening rights and equities.”  (Emphasis added).  
Kling
, 3 Ill. 2d at 462; see also 
State Life Insurance Co. v. Freeman
, 308 Ill. App. 127, 140 (1941).

Under our supreme court's rationale, only a purchaser who is 
bona fide
 may acquire property free and clear of third-party interests.  Not doing so would render the statutes that define and distinguish those terms meaningless. 

Here, the record reflects that Jaster acknowledges receiving a quitclaim deed from his former spouse in November 1995 which transferred any interest she had in the property to him at that time.  The property interest that Jaster received included Krueger's lien.  Jaster admitted his knowledge of Krueger's lien when he attempted to clear title to the property, sometime prior to the judicial foreclosure sale.  During the pendency of these proceedings, Jaster filed his appearance and a pleading titled “counterclaim,” which acknowledged Krueger's judgment lien on the property and requested an adjudication of the lien.  The trial court, in an 
agreed
 order, set arguments on Jaster's pleading and Krueger's motion to strike on January 21, 1997. However, once Jaster became the successful bidder at the sale conducted on January 14, 1997, Jaster prepared an order, which the trial court entered on January 21, 1997, allowing Jaster to “voluntarily withdraw” his “[m]otion to Adjudicate the Lien of *** Krueger.”  Jaster clearly failed to establish that he had no actual or constructive notice of Krueger's lien interest in the property.  Based on Jaster's knowledge of Krueger's lien interest, which, as the record reflects, predates the date of the judicial foreclosure sale, Jaster did not take title without notice of outstanding rights or interests of others.  Therefore, Jaster should not be considered a 
bona fide
 purchaser.  As such, he should not be allowed to take title to his property free of any interests of third persons or parties, including Krueger. 

The record also reflects that Jaster did not take title in good faith.  The record reflects that Jaster's admitted motivation was to clear title to the property by dissolving Krueger's lien.  The purpose of a mortgage foreclosure is to enforce the payment of a mortgagor's debt.  
Skach v. Sykora
, 6 Ill. 2d 215, 221 (1955).  The redemption statute permits a debtor the opportunity to avoid forfeiting the property to creditors as well as allowing creditors the opportunity to recoup their losses incurred by the mortgage debt.  
Skach
, 6 Ill. 2d at 221.  It is doubtful that the legislature contemplated that an owner of redemption or mortgagor might, after the redemption period provided for her or his benefit had expired, enter into some scheme to realize something to the mortgagor's benefit out of the mortgaged premises.  See 
Gilbert v. Smith
, 167 Ill. App. 255, 261 (1912).  To allow an owner or mortgagor to do so otherwise would be tantamount to fraud.  This court should be unwilling to adopt such an interpretation of the foreclosure and redemption statutes.  See 
Holland v. Fulbert, Inc.
, 371 N.Y.S.2d 509 (N.Y. App. Div. 1975)(refusing to allow an owner of the equity of redemption to cut off the junior mortgagee by purchasing the senior mortgage at a foreclosure sale).  I believe that Jaster's conduct regarding the circumstances surrounding the foreclosure and subsequent repurchase of his own property, coupled with his motion practice concerning the adjudication of Krueger's lien, clearly reflects a showing of fraudulent conduct that the majority fails to acknowledge.

The majority states that no redemption may occur after the statutory time to redeem has expired.  I disagree.  Cases abound in which owners of redemption are allowed to redeem their property despite the statutory expiration date.  See 
Commercial Credit Loans, Inc. v. Espinoza
, 293 Ill. App. 3d 923 (1997); 
Citicorp Savings v. First Chicago Trust Co.
, 269 Ill. App. 3d 293, 300-01 (1995); see also, 
e.g.
, 
People v. Meyers
, 158 Ill. 2d 46, 60 (1994) (stating that “[t]he law favors redemption of *** property by its owner”).  Therefore, the expiration of the statutory redemption period does not serve as an absolute bar to redemption.  I firmly believe that an owner of redemption, or mortgagor, does not morph into a 
bona fide
 purchaser upon the expiration of the redemption period.  In the present case, had Jaster wished to redeem after January 11, 1997, and expressed his desire to BCGS, then it was likely, in the interests of justice, that BCGS would have accepted the amount needed to pay off the mortgage plus its costs.  In doing so, it is also likely that Jaster could have even redeemed his property at a lesser amount than for what he bid on it at the judicial foreclosure sale.  

The majority also commented on Krueger's efforts to protect its interest in the property pursuant to its lien.  I feel compelled to note that Krueger made every effort to protect its interest during the pendency of the foreclosure suit, including an attempt to bid at the judicial foreclosure sale, but was unable to do so because of a lack of communication regarding the location of the sale.  In any event, I find these efforts unimportant when justice is the paramount issue.

The majority would remand this case to allow Krueger to “demonstrate its right to the surplus” to the trial court.  Although I am assuaged by the majority's remand of this issue, I am concerned that it is “too little, too late.”

Future implications of this decision are horrific and likely contrary to legislative intent.  The majority's decision means that mortgagors, when faced with an unwanted lien on their property, should simply stop paying on their mortgage, allow the property to fall into foreclosure, allow the redemption period to pass, and then successfully bid on the property to retake title free and clear of all junior liens.

Because I believe that justice was otherwise not done (see 735 ILCS 5/15--1508(b)(iv)(West 1996)), I respectfully dissent.